FOOT & HODGES v. THE RUTLAND AND WHITEHALL RAIL-
ROAD COMPANY.

*Corporations. Contract. Book account. Auditor.*

S. contracted with the defendants to build their railroad and bear all the expen-
ses of litigation growing out of its construction, and it was agreed that
he might use the defendants' name in all necessary litigation. H, one of
the defendants' directors, of which there were five, was also the agent of S.,
in relation to the execution of this contract. The plaintiffs not being aware
of any agreement that S. was to bear the whole expense of the litigation,
by the employment of H., rendered professional services, as attorneys, in a
suit against S. by a rival corporation, in which, however, the defendants
were really interested, and charged their services to the defendants. This
charge constituted the first item of the plaintiffs' account. The remaining
items were for professional services rendered in a suit brought by the plain-
tiffs in favor of H. against the same rival corporation, which suit was brought
after consultation by the plaintiffs with H. and the two other managing
directors of the defendants, and with their approval, but nothing was said
as to whom charges were to be made therefor. The object of this suit was
to protect the defendants' interests, but the two other directors, participating
with H. in the consultation with the plaintiffs, which resulted in bringing the
suit, though aware of this fact, still supposed that the plaintiffs' services were
to be rendered entirely upon the credit of S. These services were originally
charged by the plaintiffs to H. No action was ever taken by the board of
the defendants' directors in regard to the employment of counsel for the
defendants. The auditor allowed the whole of the plaintiffs' account, and
reported the foregoing facts 'n regard to it; *Held,* that as to the first item,
the plaintiffs were authorized to consider themselves employed by the
defendants, and to charge it to them, as they did; and in regard to the
remaining items, the supreme court held that the same authority existed,
and notwithstanding the original charge of them to H., construed the report
as intending to state that the services were rendered on the credit of the
defendants, and therefore rendered judgment for the plaintiffs for their
whole account.

Corporations are bound by the acts of their servants and agents, within the
ordinary line of their duty, without any formal vote conferring such author-
ity; and the action of their directors, though acting separately, if in the
usual sphere of directors, is binding upon the corporation.

BOOK ACCOUNT. The auditor reported that the plaintiffs
were attorneys, and that their account was for professional ser-
vices and attendant expenses rendered and incurred under the
following circumstances :

In 1849, shortly after the defendants organized as a corpora-

tion, they entered into a contract with R. & G. L. Schuyler, by which the latter agreed to construct the whole line of the defendants' railroad, at a certain price per mile, and it was provided therein that the Schuylers should bear the whole expense of constructing such railroad, including both land damages and all law suits and necessary legal proceedings incident thereto, and that they should have the right, at their own cost, to use the name of the defendants in all legal proceedings in any way connected with the building of such railroad and the protection of its interests.

The board of directors of the Rutland and Whitehall Railroad Company consisted of five members, only three of whom were citizens of Vermont and participated actively in the management of the affairs of the road, viz: Arunah W. Hyde, Benjamin F. Langdon and William C. Kittredge. These three persons were directors from the organization of the corporation until after the last item of the plaintiffs' account accrued. Hyde was also the agent of the Schuylers during the same period, in all matters relating to their contract with the defendants, already referred to. It appeared that Hyde acted in the name of the defendants, with the knowledge of their directors, in settling the land damages, and that he did the greater part of the business of that character.

At the October Term, 1849, of the United States circuit court in this State, a suit in chancery was commenced in favor of the Rutland and Washington Railroad Company, a rival corporation owning a road nearly parallel to that of the defendants, against R. & G. L. Schuyler, for the purpose of procuring an injunction against the construction of a certain portion of the defendants' railroad. The plaintiffs were retained by Hyde at that term as solicitors to defend that action, but it did not appear that at the time of their employment anything was said respecting the party to whom the charge for the plaintiffs' services was to be made. The first item in the plaintiffs' account was the only charge relating to this suit, and was the only item originally charged to the defendants by the plaintiffs.

In 1850, while the contractors on the Rutland and Washington Railroad and the Rutland and Whitehall Railroad were both at work constructing their respective roads near the village of Cas-

tleton, the former were about to turn the courses of certain streams in that neighborhood, in such a manner as to occasion apprehensions; among those interested in building the latter road, of serious and permanent injury to their road. Hodges, one of the plaintiffs, went from Rutland to Castleton in compliance with a request by telegraph, sent him by Langdon or Hyde, which message was sent with the approval of Kittredge, and there had a consultation with Langdon and Hyde respecting the proceedings which had occasioned these apprehensions, and the proper method of stopping them. Hodges advised that a suit in chancery should be commenced in the name of Hyde (who was the owner of the land through which the water courses were proposed to be turned) against the Rutland and Washington Railroad Company for the purpose of obtaining an injunction against such change of their channels, and, as the result of this consultation, Hodges was directed by Hyde to commence such a suit, which was accordingly done, and for the plaintiffs' services in the prosecution thereof, all the remaining items of their account accrued, except the second item, which was for time and expenses in going to Castleton to attend the above mentioned consultation.

The only purpose for which the suit in chancery in the name of Hyde against the Rutland and Washington Railroad Company was commenced, was incidentally to protect and defend the interests of the defendants, and Hyde, Langdon and Kittredge were each cognizant of this fact at and from the time of the commencement of the suit. The board of directors of the Rutland and Whitehall Railroad Company never gave any express authority to Hyde, or any other person, to employ any counsel on account of the company in any case, and the subject of the employment of counsel was never before the board at any of their meetings. Langdon and Kittredge, at the time of the plaintiffs' employment by Hyde to bring the chancery suit in the latter's favor, understood that the plaintiffs were employed on the account of the Schuylers, and never contemplated the incurring of any liability on the part of the defendants, by reason of such employment. But Hodges did not know at the time of his consultation with Hyde and Langdon, that either of them was acting in any other capacity than as directors of the defendants, and while their

account was accruing the plaintiffs were not aware of the terms of the contract between the Schuylers and the defendants, above set forth, and had no reason to suppose that the Schuylers were to be liable for the expenses of the legal proceedings arising out of the construction of the defendants' road.

The services performed by the plaintiffs and charged in their account presented against the defendants, were in furtherance of the interests and objects of the defendants and for their benefit.

The first item of the plaintiffs' account was charged by them originally to the defendants; the second item to Hyde, Fuller & Hyde, of which firm Arunah W. Hyde was a member, and the remainder of the account to Hyde.

Upon these facts the auditor reported that the defendants were indebted to the plaintiffs in the amount of their account presented before him, with interest.

In the county court the defendants objected to the acceptance of this report, and claimed that upon the facts reported the judgment should be for the defendants, but the court, at the March Term, 1859,—PIERPOINT, J., presiding,—rendered judgment, *pro forma*, for the plaintiffs, for the amount reported by the auditor, to which the defendants excepted.

—— ——, for the defendants.

*S. H. Hodges*, for the plaintiffs.

ALDIS J. The questions which are presented to us for consideration in this case arise upon an auditor's report. The auditor has allowed all the items of the plaintiffs' account as charged, and then proceeds to set forth the facts which he finds proved in the case, without in terms submitting any question of law to the court. It is claimed that the facts as found do not justify the conclusion of the auditor in this respect, viz: that no privity of contract is established between the plaintiffs and the defendants.

It appears that by a contract between the defendants and R. & G. L. Schuyler, the Schuylers were to build the defendants' road and to incur all expenses of the character which compose the plaintiffs' account; that one Hyde was the agent of the Schuy-

Foot & Hodges *v*. R. & W. R. R. Co.

lers, and authorized by them to incur all necessary legal expenses in the construction of the road, and that Hyde used the name of the railroad company with the knowledge of the directors; that the plaintiffs were employed by Hyde as to the first item in their account, and as to the remaining items by Hyde, who was one of the directors of the defendants, and by two of the other five directors, the two other directors supposing, though nothing was said to that effect, that the plaintiffs were to look to the Schuylers for their pay. There never was any action of the defendants' board of directors employing the plaintiffs, or authorizing Hyde to act for them; but the board did authorize the Schuylers to do all acts in the construction of the road which the defendants might do, and to use the name of the defendants in all matters of business, when necessary.

I. It has been frequently settled, and needs no citation of authorities to show, that corporations are bound by the acts of servants and agents in their employment, and within their ordinary line of duty, without any formal vote conferring such authority; and that the action of directors, though acting separately, if in the usual sphere of directors, binds the company.

In this case the action of three of the five directors in employing the plaintiffs to perform the services charged, (which includes the whole of the plaintiffs' account except the first charge,) would bind the defendants, unless it was understood by the plaintiffs that they were to charge for their services, not the corporation, but some other person, either the Schuylers or Hyde.

So the employment by Hyde as to the first item would, *prima facie*, bind the company, as he was apparently acting as their agent in all such business. The charge for the first item was for professional services in defending a suit brought by the Rutland and Washington Railroad Company against the Schuylers, but in which the defendants were the real, though the Schuylers were the nominal parties. This charge was originally made to the defendants, and not to the Schuylers. If it had appeared in the case that the plaintiffs, when they rendered these services, knew that the Schuylers were to bear the expenses of all such legal proceedings, then clearly the plaintiffs could not recover for their services so rendered. But the report shows that they had

no such knowledge, but on the contrary, their whole account accrued in entire ignorance of this agreement between the Schuylers and the defendants.

As this charge was originally made to the defendants, was for services in business connected with building their road, and was rendered at the request of Hyde, who was one of their directors, and who was also their ostensible agent, through the Schuylers, for all such business, we think that the plaintiffs having no knowledge of the agreement by which the Schuylers were to bear all such expenses, were authorized to consider themselves as employed by the defendants, and to charge these fees, as they did, to the defendants.

As to the remainder of the account, so far as the question arises as to the proof of employment, apparently by the railroad company, the case is still stronger for the plaintiffs, for as to these services they were employed by Hyde and two other directors, being a majority of the board, and no intimation given that they were to look to any other person than the defendants. So as to the business in which they were so employed, the case shows, to quote its language, "that the *only* purpose for which the suit was commenced was incidentally to protect and defend the interests of the defendants, and that the three directors who employed the plaintiffs were each cognizant of this fact." So far, the right to charge the defendants is clear, and we should have found no difficulty with the case if another fact had not been stated by the auditor, viz: that the plaintiffs originally charged these items of the account to Hyde, and not to the defendants. Such a charge standing alone and unexplained, would show that in fact the plaintiffs rendered their services upon the credit of Hyde, and not upon the credit of the company. Upon this vital point the auditor has not in express terms stated upon whose credit he finds the services were rendered. The entry on the plaintiffs' book, as we have already said, would show it was upon Hyde's credit. On the other hand, the facts, that the services were not for the benefit of Hyde, but solely for the benefit of the company, and upon consultation with and apparently upon employment by a majority of the directors, would tend strongly to rebut that presumption. We have, however, with

considerable hesitation, come to the conclusion to construe the report as intending to state that the credit was given to the company. We do so, because, first, the general finding of the auditor is for the plaintiffs upon the whole account, and it is reasonable to give that construction to this report which sustains the finding; and, secondly, because we cannot perceive how the auditor could have come to this conclusion on behalf of the plaintiffs, unless he had found the credit given to the defendants.

The judgment is therefore affirmed.