## John A. Roebling's Sons Co. *v.* Barre & Montpelier Traction & Power Co.

October Term, 1903.

Present: Rowell, C. J., Munson, Start, Watson, Stafford, and Haselton, JJ.

Opinion filed December 21, 1903.

### *Corporations—Directors—Delegated Authority—Executive Committee—Exceptions—Transcript Controlling.*

When the executive committee of three from its board of directors orders wire for a corporation, and another of said committee, without objection, sees the bills charging the corporation therefor, and sees the wire made part of its plant, and the third member is ignorant of the transaction, the corporation is bound, if said committee itself can bind it.

A by-law of a corporation providing for an executive committee, and requiring the assent of the directors to be had before the acts of such committee shall be binding, does not require that transactions in the ordinary course of business should be specially authorized.

The purchase of necessary material for a corporation is a transaction in the ordinary course of business, and as such, may be delegated by the directors to an executive committee, without violation of the rule that discretionary powers can not be delegated.

The authority to purchase necessary material for a corporation is conferred by the board of directors upon its executive committee, by unanimous acquiescence in the conducting of the ordinary business of the corporation by such committee.

When the transcript of the evidence is made controlling by the bill of exceptions, the construction put thereon by the Supreme Court will govern as to the tendency of the evidence, even in contradiction of an allegation as to such tendency in the bill of exceptions.

GENERAL ASSUMPSIT to recover for certain copper wire. Pleas, the general issue, and declaration in offset to recover eight hundred dollars which defendant claimed was paid plaintiff without consideration and without authority. The general issue was pleaded to the declaration in offset. Trial by jury at the March Term, 1900, Washington County, *Tyler,* Judge, presiding. At the close of all the evidence the plaintiff moved the court to direct a verdict for the plaintiff. This motion was overruled, to which the plaintiff excepted. Verdict for the defendant to recover his costs, and to recover eight hundred dollars on its declaration in offset. Judgment on verdict. The plaintiff excepted.

The reporter has not been furnished with the transcript of the evidence. The following is quoted from the bill of exceptions.

"The defendant claimed, and its evidence tended to show, that the purchase in question was not made upon the credit of the defendant company and that said Ferguson had no authority, either general or special, to make such purchase, and that there had been no subsequent ratification of the purchase by the defendant, nor had the defendant any knowledge or reason to suspect that the purchase had been made upon its credit. The plaintiff's evidence tended to show the contrary, and in this connection the defendant introduced evidence tending to show that the firm of Ferguson & Richardson, of which

said Ferguson was a member, had taken the contract for the construction and equipment of its road from Barre to Montpelier, and had undertaken to furnish all the material and supplies necessary to make the road safe, complete and capable of operation as an electric road, including the purchase of all necessary feed wire requisite for its completion."

"Said Ferguson testified that he made said purchase as a director and executive committee of the defendant company, having full authority in that behalf.  The plaintiff's evidence tended to show that Kennedy and Ferguson agreed upon the necessity for the purchase of said feed wire in order to complete the road, and that it should be bought without delay, the conversation occurring in the month of August, 1898, and that said Kennedy, who besides his office of executive committee, was president of the defendant company at the time, instructed him to make the purchase for the defendant.  This conversation was denied by said Kennedy, who was introduced as a witness by the defendant.  There was no question but that all negotiations in relation to the purchase of said feed wire were between the plaintiff's agent and said Ferguson."

"The evidence of the plaintiff tended to show the road in operation from July, 1898, and during the months of July, August, and September, and subsequently, and that the wire in controversy was received and put up during the month of September, by workmen employed and working under the direction of Thomas E. Smith, the defendant's superintendent, and who was at that time superintending the construction and operation of the defendant's road, and against the objection and exception of the defendant, introduced evidence of approval by said Smith of the bills in question.  To meet this the defendant, against the objection and exception of the plaintiff, was allowed to introduce the evidence of said Smith.

to the effect that he was employed as superintendent of the construction of said road by direction of Mr. Murch, the agent of the Worcester Construction Company, and that at the time of placing the wire in question, he was acting under the instructions of Mr. Ferguson and Mr. Barnes, the agent of Messrs. Ferguson & Richardson, the contractors; and the defendant also further, against the objection and exception of the plaintiff, introduced evidence of witnesses to the effect that during the months of July, August and September, and including the time when the wire was put in place as part of the defendant's electric system, Messrs. Ferguson & Richardson, the contractors, operated the road exclusively."

The other facts appear in the opinion.

*J. P. Lamson* and *Herbert Noble* for the plaintiff.

Authority was by implication conferred upon Ferguson to order this wire. *Scofield* v. *Parlin, etc. Co.* 61 Fed. Rep. 804; *Merchants Bank* v. *State Bank,* 77 U. S. (10 Wall.) 604; *Case* v. *Bank,* 100 U. S. 446; *Greggs* v. *Selden,* 58 Vt. 561; *Commercial, etc. Ins. Co.* v. *Union Mutual Ins. Co.,* 19 How. 322; *R. R. Co.* v. *Coleman,* 18 Ill. 298; *Oil Co.* v. *Gilson,* 63 Pa. St. 150; *Bank* v. *R. R. Co.,* 30 Vt. 170.

The defendant is chargeable with notice of the transaction with the plaintiff. *Fulton Bank* v. *Bank,* 4 Paige 127; *Bridgeport Bank* v. *R. R. Co.,* 30 Conn. 231, 270; *N. Y. etc. R. Co.* v. *Schuyler,* 34 N. Y. 30, 84; *New Hope, etc. Co.* v. *Bank,* 3 N. Y. 156; *Railway Co's.* v. *Keokuk Bridge Co.,* 131 U. S. 371; *Bank* v. *Davis,* 2 Hill 445; *Union Bank* v. *Campbell,* 4 Humph. (Tenn.) 394; *Kennedy* v. *Green,* 3 Mylne & K. 699; *Fishkill Sav. Inst.* v. *Bank,* 80 N. Y. 162; *Martin* v. *Webb,* 110 U. S. 7.

The act of Ferguson in ordering the wire was ratified by the defendant, hence it is bound. *Taylor* v. *A. & M. Assn. etc.,* 68 Ala. 229; *Begou* v. *Tihe,* 23 La. Ann. 788; *Medomak Bank* v. *Curtis,* 24 Me. 36; *Grape Sugar Co.* v. *Small,* 40 Md. 395; *Wood Co.* v. *King,* 45 Ga. 34; *Bucher* v. *R. Co.,* 43 Vt. 133; *State* v. *Smith,* 48 Vt. 266; *Hooker* v. *Bank,* 30 N. Y. 83; *People's Bank* v. *Bank,* 101 U. S. 181; *Scott* v. *Ry. Co.,* 86 N. Y. 200; *Wyndham* v. *Sprague,* 43 Vt. 502.

Defendant ratified purchase by failure to disaffirm within a reasonable time. *Fitzgerald Cons. Co.* v. *Fitzgerald,* 137 U. S. 98; *Indianapolis Rolling Mill* v. *St. Louis, etc. R. Co.,* 120 U. S. 356; *Olcutt* v. *R. Co.,* 27 N. Y. 546.

The purchase was ratified by failure of defendant to place plaintiff *statu quo,* or to offer to do so. *Yeoman* v. *Bell,* 151 N. Y. 234; *Nichols* v. *Palmer,* 18 N. Y. 312; *Neal* v. *Reynolds,* 38 Kan. 432.

The court should have directed a verdict for plaintiff. *Bank* v. *Fassett,* 42 Vt. 432.

The $800.00 was a voluntary payment and can not be recovered. *Stevens* v. *Head,* 9 Vt. 174; *Wheatley* v. *Waldo,* 36 Vt. 237; *Taggart* v. *Rice,* 37 Vt. 47; *Williams* v. *Colby,* 44 Vt. 40; *Sowles* v. *Soule,* 59 Vt. 131.

*Hunton & Stickney* for the defendant.

The evidence of the defendant tended to show that Ferguson was never authorized to pledge its credit; that the wire was material which the contractors were bound to furnish. Plaintiff's motion for a verdict ignores defendant's evidence and was properly overruled. The evidence was conflicting and the jury found for the defendant. *Lyndon Mill Co.* v. *Lyndon Inst.,* 63 Vt. 581; *Saville, Somes & Co.* v. *Welch,* 58 Vt. 683; *Boynton* v. *Braley,* 54 Vt. 92.

· STAFFORD, J.   The defendant is a Vermont corporation running an electric railroad between Barre and Montpelier, and is sued for six miles of copper feed wire which the plaintiff, a corporation of another state, claims to have sold and delivered to it in August, 1898.   The defense is that the wire, although received by the defendant and made a part of its plant, was purchased by Ferguson & Richardson, a firm of contractors, who, it is claimed, were bound to and did furnish it, as a part of the equipment, under their contract with the road.   Ferguson, of the firm of contractors, was likewise a director of the defendant and a member of its executive committee.   It was he who ordered the wire of the plaintiff.   In doing so he claimed to be acting for the corporation as director and committee-man, and so far as the plaintiff's understanding and intention are concerned the wire was furnished upon the credit of the defendant.   Kennedy, the president of the defendant and at the same time a member of the executive committee, saw the bills of the wire soon after it came and noticed that it had been procured on the credit of the defendant.   He also knew that it was being made a part of the plant.   Yet he took no steps to notify the plaintiff that it must not look to the defendant for its pay.   Thus a majority of the executive committee acted in a way to bind the defendant if the committee itself could have bound it.   *McNeil* v. *Boston Chamber of Commerce,* 154 Mass. 277.   The third member knew nothing of the transaction and took no active part in the management.   There were nine directors, indeed, but the whole business of the corporation was managed by the officers of the board, and the officers took their instructions from Ferguson who was allowed to control everything.   This appears from the testimony of the directors themselves.   Kennedy, Ferguson and Flynn, three of the number, were themselves the exec-

utive committee whose conduct and attitude have been de-scribed. Bush testified that the general business of the company was left to the committee. Howland said the same. Miles declared that he let it run itself. Humphrey, the nominal treasurer, left all the duties of his office to Butman, the assistant treasurer, and knew no more of the money business of the concern than as if he had not been treasurer. Butman himself repeatedly dealt with the plaintiff on the basis of the company owing for the wire and sent it a check for $800 on account. Pierson, the only other director, died before the wire was ordered. We find no evidence to the contrary.

A claim was advanced that the road, from the time the cars began to run until after the wire had been put up, was being operated by Ferguson as contractor for the purpose of testing it, and not by him as an officer of the corporation. An offer was made to show this and a ruling obtained that it might be shown; but the testimony produced had no tendency to support the offer. A few answers, if taken alone, might be thought to do so, but read in connection with other answers of the same witness and with the unquestioned facts, they cannot be considered to have the effect claimed.

It was June 28th when the cars began to run. It was the last of August when the wire was ordered. It was the first of September when the wire was received, and the end of September when the last of it was installed. From July 3d the superintendent of the road was Smith. The assistant, and only acting, treasurer was Butman. The man who controlled the corporation was Ferguson. During these three months the road was in active operation in the name of the defendant. There is no pretense that anything was left to be done towards its construction unless it was the supplying of the wire in question. The daily receipts were collected by

the superintendent and deposited to the credit of the defendant and disbursed by the assistant treasurer for the expenses of the company, including the wages of the employees and the salary of the superintendent.  Books of account were kept by the assistant treasurer showing receipts and disbursements.  The wire was put up by the superintendent under direction of Ferguson and the work paid for in the first instance by the defendant and sometime later, perhaps after this controversy arose, charged over to the builders. Smith testified that he kept the account of this work separate because he did not regard it as "any part of our work,"— that is, any part of the work of the corporation which he, as superintendent, was carrying on, which could only mean the operating of the road.  The wire was necessary for the safe and regular conduct of the business of transportation and was especially desired and called for by the superintendent and president in anticipation of an unusual amount of traffic which would attend the opening of a fair at Barre on the 7th of September.  During these three months, as afterwards, the bills against the company were approved by the superintendent and by him sent to and paid by the assistant treasurer. The contract for the construction of the road gave the contractors no right to operate it after it was constructed.  The defendant had been fully organized and was doing business before the contract for constructing the road was entered into. All the directors understood how the business was being done. We shall now notice the answers alluded to above.  Humphrey, the nominal treasurer, referred to already, who does not testify to any means of knowledge except that he was frequently over the road, says that the orders for running it were given by Ferguson & Richardson, and that "as far as he knew" the corporation was not running the road; that "there

was somebody else running the road: We hadn't accepted it." But later he says the road was never accepted, although, he admits that it has long been operated by the defendant. It is evident that he is giving merely his opinion of the situation and not testifying to any matter of fact in conflict with, those above recited. An attempt was made to show by Kennedy, the president, that the road was not being operated for the corporation, but he declines to make that statement, saying only that Ferguson was the man in control. Smith says he received instructions from Ferguson and from Barnes, an agent of Ferguson & Richardson. To say that these answers taken in connection with the uncontroverted facts have any tendency to show that the road was not being operated by the defendant, is hardly possible. We are aware that the bill of exceptions affirms that there was evidence tending to show that the road was being operated by the contractors as such, but the bill makes the transcript of the testimony controlling and a careful examination of the whole has led us to the conclusion we have just stated.

So we must add to the facts summed up in the beginning the further fact that the wire was purchased and appropriated at a time when the road was being operated by the defendant.

The question then is whether the corporation is bound by the action of the committee.

A by-law provided for "an executive committee of three to perform the general duties of directors, the assent of the directors to be had before the acts of such committee shall be binding upon them." But we do not regard that as altering the rule of law touching the power of directors to act through a committee. It can not mean that ordinary every-day matters must be specifically authorized one by one, for that would make the committee useless, and on the other hand matters.

requiring the exercise of discretionary powers could not be delegated even if the by-law had been silent upon the subject.

The principle that a board of directors is the depositary of discretionary powers to be exercised by the board itself and not to be delegated by it to any smaller body even of its own members is entirely consistent with the other principle that it may delegate authority to perform such duties as are required in the usual and ordinary course of its business. The act here questioned was the procuring of material or supplies necessary for the prompt and orderly conduct of its daily business and for the safety of human life, and in our opinion falls within the second principle. The authority to perform such an act must be held to have been conferred by the unanimous acquiescence of the directors in the course of business which had been pursued.

The directors were all consenting to the operating of the road by the committee. By so consenting they did exercise their judgment and discretion, and impliedly authorized those who were actually operating to do the things and procure the supplies needful therefor. The latter, as agents of the board, were therefore acting within the scope of their authority in procuring them. *Hooker* v. *Eagle Bank of Rochester,* 30 N. Y. 83, 86 Am. Dec. 351; *Olcott* v. *Tioga R. Co.,* 27 N. Y. 546, 84 Am. Dec. 298, 303; *McNeil* v. *Boston Chamber of Commerce,* 154 Mass. 277.

If the officer who purchased the material on the credit of the corporation was under contract with the latter to furnish it himself that may afford a subject for adjustment or litigation between the officer and the corporation, but is not enough to defeat a plaintiff otherwise entitled to recover.

There being no dispute as to the amount due the plaintiff, if entitled to recover, it moved the court for a verdict, and we think its motion ought to have been granted.

*Judgment reversed, and cause remanded.*

