JERRY BUCKLEY v. GEORGE E. JENNINGS.

February Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and CHASE, Supr. J.

Opinion filed May 3, 1921.

*Objection Must Be Made When Court Rules—Directed Verdict Upheld if There Was Evidence to Sustain It—Directors Acting Separately May Bind Corporation—Sales—Change of Possession—Possession in Buyer at Time of Sale—Employee of Corporation Held to Have Paid Judgment With His Own Money.*

1. Where both parties moved for a directed verdict and said there was nothing to be submitted to the jury, and the court stated to the jury that both sides conceded that the uncontradicted testimony in the case was determinative of the outcome, it was the duty of the defendant to then object, if he understood or claimed the position of the parties to be otherwise.

2. In such circumstances it was for the court to direct a verdict on such a state of facts as it regarded proved by the evidence, and such verdict will be upheld if there was evidence to sustain it.

3. The action of a majority of the directors of a corporation, though acting separately, if within the scope of their powers, binds the corporation, in the absence of any provision in its charter or by-laws rendering such action illegal; and they may thus make a legal sale of the corporation's personal property.

4. Where personal property of the seller is in the manual possession of the buyer at the time of sale, no other change of possession is essential in law to make the sale valid as to third parties.

5. Where plaintiff, an employee of a telephone company, paid himself from telephone tolls collected by him, and used tolls, which he was keeping to apply on his wages and which he had a right to so apply, to settle a judgment against the company, such settlement was, in legal effect, with his own money.

ACTION OF TROVER to recover the value of certain wire taken and sold by the defendant under an execution against the Independent Telephone Exchange. Trial by jury at the September Term, 1918, Orleans County, *Wilson,* J., presiding. At the close of the evidence both parties moved for a directed verdict; and the Court directed a verdict for the plaintiff. The defendant excepted. The opinion states the case.

*E. A. Cook* and *W. W. Reirden* for the defendant.

*Frank D. Thompson* for the plaintiff.

WATSON, C. J. This is an action of trover brought against the defendant, a deputy sheriff, for selling 4,875 pounds of telephone wire on an execution in favor of one Corliss and against the Independent Telephone Exchange, hereinafter called the telephone company. The plaintiff claimed to own the wire by purchase of the telephone company at the time a suit brought by Cook & Norton against that company was settled as stated below.

The examination of the plaintiff's first witness was concluded by an agreement of counsel that the defendant took the wire in question as a public officer, and sold it on execution, and that there was no question about the legality of the sale if the wire belonged to the telephone company; but if it belonged to the plaintiff his right of recovery was conceded. The sale by the officer was on May 25, 1918.

The trial then proceeded accordingly, the plaintiff claiming to have purchased the wire of the telephone company, and to have taken possession of it under such purchase on the same day it was attached by the defendant and before the attachment. The only question was, "whether there was such sale and delivery as passed the title to the plaintiff."

[1]    At the close of the evidence each party asked the court to direct a verdict for himself, and said there was nothing to be submitted to the jury, the value of the wire being agreed to. This shows that neither party desired to go to the jury on any issue of fact, and the plaintiff's brief so states.    In defendant's reply brief, however, it is said that this is not true; that there is nothing in the record which places the defendant in any different position from that of simply moving for a directed verdict in his favor.    Referring to the transcript, which is made to control as to any exceptions of the defendant, it appears that immediately following the two motions for a verdict, counsel for plaintiff stated the agreed damages, and one of defendant's counsel said, "I assume that the court will in any event take a verdict from the jury, either by special finding or an order," to which the court answered in the affirmative.    Then addressing the jury, the court said: "Matters have arisen * * * which are going to relieve you of some of your trouble.    There has been a motion for a verdict on each side, and the matter shaped itself so that it has become the duty of the court, on the evidence * * * to rule as a matter of law, it being conceded by both sides that the uncontradicted testimony in the case is determinative of the outcome, and in that case it is the burden for the court and not for the jury, there being no conflict."    A directed verdict for the plaintiff followed.    Counsel for defendant took an exception to the directing of a verdict, and to the refusal of defendant's motion and the granting of plaintiff's motion.    But no exception was taken to the court's statement as quoted above, nor to any part of it.    That statement to the jury showed what the court understood the position of the parties to be, and if defendant understood or claimed it to be otherwise, fairness to the court required him to make it known then and there, so the court might correct itself if in error.    This was not done, and the court acted according to the statement it so made.    It would be unjust to that court to permit the defendant now to take a different position, thereby putting the court in error.

[2]   In such circumstances it was for the court to direct a verdict on such a state of facts as it regarded proved by the evidence, and the verdict will be upheld if there was evidence to sustain it.   *Lowe* v. *Vermont Savings Bank*, 90 Vt. 532, 98 Atl. 1023; *Brightlook Hospital Assn.* v. *Garfield*, 92 Vt. 353, 104 Atl. 99.

"The defendant makes three contentions in this case," says his brief:  (1) There was not sufficient and legal action by the directors to constitute a sale; (2) on the undisputed testimony the title to the wire did not pass to the plaintiff; (3) there was no change of possession such as the law requires to make the sale valid as to third parties.

[3, 4]   In the summer of 1917 and until the first of February, 1918, the plaintiff was in the employ of the telephone company as manager, running the line or business for them. His work consisted of doing trouble work, and collecting.  His own pay from the company came from the telephone tolls which he collected, having on January 18, 1918, between $90 and $100 of tolls collected which he was keeping to apply on his own wages.   On that day the company was indebted to him in the sum of some $1,800, of which between $600 and $700 consisted of orders and book account for work done under such employment.

The wire in question, when shipped to the company at the time of its purchase, in May and June, 1917, was put in the henhouse on the place in Barton, occupied by the plaintiff and his brother Cornelius, and it remained there until they wanted to shut up the henhouse about the first of November following, when they piled the wire outside in their backyard, where it was when attached on the Corliss writ, January 18, 1918, as stated further on.   So far as appears, the telephone company had nothing to do with the premises where the wire was so kept.  The evidence tended to show that those premises were in the sole possession and occupancy of the plaintiff and his brother Cornelius, and that during all that time the wire was in the plaintiff's possession, and the court was warranted in so finding.

Prior to the day last named, the firm of Cook & Norton had recovered a judgment against the telephone company for about $120, had taken out an execution thereon, which execution had been levied by Officer Jennings, the defendant in the instant case, on the wire in question, then the property of the telephone company, the wire being advertised for sale on that day under

such execution. The officer was about to sell the wire as advertised, when the plaintiff called the several directors of the telephone company over the telephone, and asked them, in the language of the plaintiff's testimony, "if they was willing I should—if I should settle the Cook (and Norton) bill that if they was willing I should apply on my work the amount of the wire, and I to have the wire, I would give them credit for the wire, and they said they was."

Thereupon the plaintiff settled the Cook & Norton judgment, by giving the telephone company credit for a telephone bill which it had against them, and by the plaintiff's paying the officer the balance due on the judgment, it being $82 or $83, from the toll moneys collected by him and in his hands. The plaintiff immediately gave the telephone company credit on his account against it, for the sum of $373.72, the amount the wire cost the company. After all this was done, the wire was attached on the Corliss writ by Officer Jennings, as the property of the telephone company, and it was sold by the officer on execution issued in the same case, on May 25, 1918.

It is urged that the directors of the company could not, by acting separately, effect a legal sale of the wire to the plaintiff; that the law required a meeting of the directors and a concert of action in the transaction in order to give it validity. But the law has been too long settled otherwise to be now open to question. The action of a majority of the directors though acting separately, if within the scope of their powers as directors, binds the company. *Bank of Middlebury* v. *Rutland & W. R. Co.*, 30 Vt. 159; *Foot* v. *Rutland & W. R. Co.*, 32 Vt. 633. No provision of the corporate charter or by-laws has been called to our attention which renders such action illegal. But it is further urged that a majority of the directors did not act even separately. On this question the plaintiff testified as follows: "Q. Now, on this 18th day of January, 1918, did you have any talk with any of the directors or the president of the company about paying this execution of Cook & Norton, and about taking the wire that you did? A. I did. Q. And do you remember what directors you talked with? A. Yes [naming them]. Q. Now was the substance of the talk that you had with each one the same or different? A. All just the same. Q. And what was it? [The answer to this question has already been stated]. And that was from all of the directors? A. Yes. Q. And did you call them up at

their homes? A. Yes." The plaintiff, being then the active manager of the telephone company, must have known who the directors were, constituting the full board. This evidence sustains the facts which the court must have regarded as proved, namely, that the majority, at least, of the directors acted (separately) in the transaction with the plaintiff, whereby the latter thereafter held the wire as his own property under such purchase; and that the title to the wire then passed from the corporation to the plaintiff, it being in his manual possession before as well as after. No other change of possession was essential in law to make the sale valid as to third parties. *Manton* v. *Moore,* 7 T. R. 67, 101 Eng. Reprint, 858; *Nichols* v. *Patten,* 18 Me. 231, 36 A. D. 713; *Taylor* v. *Freret,* 9 La. Ann. 437; *Macumber* v. *Parker,* 13 Pick. (Mass.) 175.

[5] It is further urged that on the evidence the money with which the Cook & Norton judgment was settled belonged to the telephone company, and consequently the company, not the plaintiff, paid the judgment. But in view of the method of doing business, and the fact that the plaintiff's pay from the company came from telephone tolls collected by him, he had a right to apply all such moneys in his hands on January 18, 1918, on his own wages, the purpose for which he was keeping it. This being so, we think when he applied the money in settlement of that judgment under the aforementioned agreement with the directors, it was in legal effect a settlement of the judgment with his own money, and consequently the evidence supported the finding of the court in this respect.

*Judgment affirmed.*