EDMUNDS BROTHERS *v.* FRED G. SMITH ET AL.

February Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ.,
and FISH, Supr. J.

Opinion filed October 4, 1921.

*Exclusion of Evidence Received Without Objection—Opinion
Evidence—Connecting Evidence—Grant of Authority to
Act for Corporation—Lessee's Possession of Premises
Through Third Person—Termination of Tenancy at Will—
Harmless Error—Motion in Arrest of Judgment—Parties
Bound by Agreed Theory on Which Case Is Tried.*

1. A party cannot allow testimony to be introduced without objection, thereby waiving his right to object, and then at some subsequent stage of the trial insist on its exclusion.

2. In an action by lessees for damages for wrongful eviction and for injury to personal property, a witness was properly permitted to testify as to the condition and value of such personal property after it had been removed from the premises, there being evidence tending to show that it was then in the same condition as when removed, and that its damaged condition was due to acts of the defendants.

3. On the evidence, the questions whether the plaintiffs had an oral lease of the premises in question, and whether the person acting for the corporation in charge of the property had authority, express or implied, to make a lease, and whether his acts had been ratified by the directors, were for the jury.

4. Authority to act for a corporation may be granted specifically by a vote of its board of directors or implied from the conduct of the proper officers, or it may be supplied by ratification of the

acts themselves, or failure to disavow them after they are known.

5. The court did not err in charging that the premises in question were in the possession of the plaintiffs between certain dates while a third person was in the occupancy of the same under an arrangement with the plaintiffs for a sublease, all of which was known to, and approved by the defendants, who received the rent from the plaintiffs and regarded them as their tenants.

6. While a tenancy at will is terminated by notice to quit, the tenant, after receiving notice, has a reasonable time to vacate the premises and procure other accommodations; such reasonable time varying with the nature of the occupancy, the property to be removed, and the means at hand to effect such removal.

7. The court's failure to make a particular charge as to the termination of a tenancy at will was not error, where the parties tried the case on the theory that the plaintiffs were entitled to recover if there was a valid oral lease of the premises, and the jury found that there was such a lease.

8. A motion in arrest of judgment only reaches defects in the pleadings and verdict apparent on the face of the strict record, and so can reach neither the specifications nor matters shown only by a transcript of the evidence.

9. Where both parties try the case and are content to have it submitted to the jury on a certain theory, it is futile for either to urge in Supreme Court that such theory as to the law was erroneous.

ACTION OF TORT. Plea, the general issue. Trial by jury at the March Term, 1920, Rutland County, *Wilson,* J., presiding. Verdict and judgment for the plaintiff. The defendants excepted. The opinion states the case.

*Marvelle C. Webber, James P. Leamy* and *William H. Bottsford* for the defendants.

*Jones & Jones* and *Walter S. Fenton* for the plaintiffs.

FISH, Supr. J.  The plaintiffs are Thomas P. Edmunds and William Edmunds, copartners doing business as Edmunds

Brothers.    The defendants are F. G. Smith, Burton F. Smith, Warren E. Smith, and Charles G. Noyes.    Three of them are directors of the Smith Lumber Company, and the fourth was acting under their directions at the time of the injuries complained of.    They are sued individually for damages claimed to have been suffered by the plaintiffs because of the alleged unlawful acts of the defendants in securing possession of a certain pool room in Fair Haven, and in keeping the possession of the same from the plaintiffs, and in doing injury to the personal property of the plaintiffs therein.

The premises in question are a basement in a building owned by one J. H. Lincoln, who let the same to Thomas Roberts for one year, beginning February 1, 1914, with an option for four years more, or until February 1, 1919.

Roberts went into possession of the premises and exercised his option for the extension of the lease.    He installed therein, at his own expense, two bowling alleys, four pool tables, and a restaurant outfit, together with the necessary equipment for operating the alleys and tables.    About June, 1918, he sold his entire property in the building to the plaintiffs, who thereafter sublet the premises to one O'Brien, who continued in possession under the plaintiffs until October 5, 1919.

At some time before the plaintiffs took a lease of the property, the Smith Lumber Company, then known as the Chaffee Lumber Company, held a mortgage on said real estate, and was authorized by Lincoln to look after said property, and from that time forward acted for Lincoln in so doing, collecting the rents and doing such acts as were necessary to be done by the owner of the property in the management thereof.

The plaintiffs remained in possession of the premises after the expiration of the written lease on February 1, 1919, with the consent of the Smith Lumber Company, acting for the owner as aforesaid.    Rent for the month of August, 1919, was paid and accepted on September 5 of that year, and all previous rent had been paid before that time.    A check for the rent for the month of September, sent the Smith Lumber Company by the plaintiffs on September 30, was retained by them and afterwards returned on December 2, 1919.

On September 24 the Smith Lumber Company gave notice in writing to the plaintiffs to vacate the premises at once, owing to the fact that the structure was to have a general overhauling and

work was expected to begin immediately thereon. Said notice also advised the plaintiffs that it would be unnecessary for them to remove their alleys to a place where they would be exposed to danger upon receipt of the notice, but informed them, notwithstanding, that the building would be turned over to a contractor within a day or two, and that then they would have to make provision for their apparatus elsewhere.

In the lease heretofore referred to between Lincoln and Roberts of the premises in question there was a provision reserving the right in the former to put in supporting posts or pillars in the said basement so as to strengthen and support the upper floors of the building. On Sunday, October 5, following said notice to vacate, the defendants, their servants and agents, entered the premises in question without the consent or knowledge of the plaintiffs, going in through a window in the boiler room of the building to which they had possession, and began the erection of posts to support the upper floors of the building. On the same day they placed a new lock on the door to the basement and took and retained possession of the premises.

The plaintiffs did not again occupy the room, but shortly after January 19, 1920, they took up the bowling alleys and rested them in an inclined position against the posts in the basement of the premises, and, early in March following, these and all other property of the plaintiffs in the said premises were removed by them. The alleys were taken to and stored in a barn in Poultney, and the pool tables taken to the same town and set up in a pool room.

The plaintiffs tried the case on the theory that there was an oral lease between Burton Smith, acting for the Smith Lumber Company, and the plaintiffs, for the year beginning March 1, 1919, and ending March 1, 1920, with privilege of renewal. This the defendants denied.

The defendants claimed that the plaintiffs had no rights in the premises except such as they acquired by reason of holding over under the old lease, and were, accordingly, tenants at will only.

The personal property of the plaintiffs in the premises was damaged. The alleys were warped and the tables and equipment more or less injured.

After verdict the claim was made for the first time in defence of the action that an oral lease would be only a tenancy at

will, and G. L. 2744 was for the first time called to the attention of the court.

The defendants bring ten questions on exceptions to this Court. Four of these relate to the testimony of one Arnet Taylor, who was improved by the plaintiffs as an expert witness; four are to the charge of the court; one is to the overruling of defendants' motion in arrest of judgment; and one to the admission of testimony.

One of the items involved was the value of the bowling alleys which the plaintiffs claimed the defendants had damaged. The witness Taylor was particularly skilled in the construction and operation of bowling alleys and billiard and pool tables, their equipment and value. No question was made but what he had expert knowledge of the subject-matter and was a competent witness on such subjects. He was familiar with the type of bowling alleys and pool tables in question, and had known these particular alleys and tables from the time they were installed until the time of the trial, and had frequently visited the place and seen them in operation, the last visit being in August or September, 1919. He gave evidence respecting the value of the alleys and pool tables as of October 4, 1919, basing the same upon his knowledge of the alleys and the assumption that they had been recently redressed and were in first-class condition on said date. He also gave evidence of the value of the alleys when examined by him on March 17, 1920, and assumed that their condition was the same as when removed from the premises in question, which was shortly before the trial.

[1] In cross-examination the witness stated that in estimating the value of the alleys he took into consideration the present cost of replacement, based on the assumption that they were in as good condition as when put in. It appeared, both in answer to a question asked by the court and on cross-examination, that the witness was taking into consideration replacement value in making his answers. He testified at considerable length and finished his testimony March 19, 1920. No objection was made at the time his testimony was received that replacement value was not the proper basis for an estimate of damages, although the witness repeatedly stated that replacement value was what he had in mind, and although his testimony was continued for some time after making such statement. Four days after the witness had left the State, and after the plaintiffs' case was

closed, the defendants moved to strike his testimony from the record on the ground that he had based his opinion on replacement value, and because the question which he was asked to answer assumed that the alleys were in first-class condition on October 4, 1919. It is enough to say in answer to the last part of the motion that the record shows that there was considerable evidence to the effect that the alleys were in first-class condition on October 4; and as to that part of the motion which relates to replacement value, the motion came too late to avail the defendants of any benefit. No excuse is offered for the delay, and no reason appears why objection and exception could not have been taken when the testimony was received. The rule in Vermont is well established that a party cannot allow testimony to be introduced without objection, thereby waiving his right to object, and then at some subsequent stage of the trial insist on its exclusion. *Laurent* v. *Vaughn,* 30 Vt. 90; *Wead* v. *St. Johnsbury and Lake Champlain R. R. Co.,* 66 Vt. 420, 29 Atl. 631; *In re Estate of Martin,* 92 Vt. 362, 104 Atl. 100.

The plaintiffs were allowed to show that they had sublet the premises by an oral agreement to one O'Brien for thirty-five dollars a month. The defendants objected on the ground that, if the plaintiffs were holding the premises on an oral lease, they would have no right to sublet without the consent of the Smith Lumber Company or the owners of the premises. It appeared that O'Brien was in occupancy of the premises under an agreement with the plaintiffs for a period of six months under which he could purchase the property belonging to the plaintiffs, if he desired, and when plaintiffs received a written lease he was to sublease. This evidence was received without objection, and no claim was made during the trial that the tenancy was terminated by the lease to O'Brien. Further, it appeared that the defendants approved of O'Brien's occupancy of the premises. The item for damage for loss of use of ten dollars per month over and above the amount the plaintiffs paid the defendants was submitted to the jury in proper instructions without objection or exception, and no claim was made but what, if plaintiffs were entitled to recover, it was a proper element of damage. This objection is without merit.

[2] The witness Taylor was permitted to testify, against objection and exception, as to the value of the alley beds and other property of the plaintiffs as he saw them on March 18, 1920,

on the ground that he found a large part of the property in a barn in Poultney and it did not appear what the condition of the barn was and what dampness was occasioned by storing the property there, or as to how the property had been stored there; that nothing appeared as to whether the property had not suffered by reason of being stored in the barn; that nothing appeared as to what its condition was when placed there; and in respect to the property at Fair Haven that it did not appear that the condition was due to the fault of the defendants and may have been due to the acts of the plaintiffs themselves.

The alley beds were seen by the witness at Fair Haven in the basement in question. They had been taken up and cut into two sections and were standing on edge on either side of some posts. The witness described the condition of the beds as "washboardy", with some scratches and gouges in them, and said one of the beds had warped. The beds had been sawed in two and taken up by the plaintiffs in January, 1920. The evidence was received in connection with an offer on the part of the plaintiffs that they would show that they had done everything possible to preserve the value of the alleys, and that their condition, as seen by the witness, would be connected with their condition when taken from the building. The record shows that there was evidence tending to make good this offer, and the exception is not sustained.

The defendants saved an exception to the testimony of Taylor as to the value of the pool tables as seen by him shortly before he testified, on the ground that their then condition was not due to the acts of the defendants; but there was likewise testimony in regard to those tending to show that their condition was the same as when removed from the premises in Fair Haven, and that this was due to the acts of the defendants. There was evidence that the workmen of the defendants covered some of the tables with sawdust, shavings, and refuse, and also played on the tables, while in the room at Fair Haven. The objection is without merit.

[3, 4] The defendants claimed that the question of whether a verbal lease was given the plaintiffs through Burton Smith. one of the defendants, was improperly submitted to the jury, for the reason that he had no authority to make the lease. Exceptions were saved on this point.

The evidence is that the plaintiffs, in company with William Stoddard, met Burton Smith at Poultney in March, 1919, and that they went to Fair Haven and visited the premises in question, where said Smith agreed to have a new lease drawn up immediately for one year, upon a rental of twenty-five dollars a month, to contain the privilege of renewal for another year. Repairs on the premises were discussed at this time. In August of the same year the same parties had a further conversation about the lease, in which Burton Smith stated that as soon as he returned from Boston, where he was soon going, he would have a lease made and sent the plaintiffs, and that the plaintiffs should go on with the repairs that had been previously asked for, and that he would give the lease as promised in March. The premises were to be sublet to O'Brien, and, as evidence of a completed agreement, the plaintiffs were permitted to show extensive repairs made by O'Brien on the strength of Burton Smith's directions, which were afterwards approved by Smith. On the occasion in March, 1919, above referred to, the witness Stoddard testified that Burton Smith said that the plaintiffs could have a lease of the premises for a year or longer. On the foregoing evidence there was a question for the jury as to whether in fact there was a verbal lease of the premises.

The question of the authority of Burton Smith to make a lease, as well as to the question of the ratification of the lease, if made by him, by the corporation, was before the court, and exceptions on these points were likewise taken by the defendants. The court charged the jury that authority to act for a corporation may be granted specifically by a vote of its board of directors, or implied from the conduct of the proper officers, or it may be supplied by ratification of the acts themselves, or failure to disavow them after they are known, and submitted the question whether Burton Smith had authority, express or implied, to act, or, if not, whether such acts were ratified expressly or by implication by the corporation.

The directors of the corporation were F. G. Smith, said Burton Smith, and Warren H. Smith. F. G. Smith was president, and Burton Smith treasurer.

Burton Smith, as a member of the Smith Lumber Company, generally conducted the business of the company in connection with the premises in question as it related to the plaintiffs. He conducted the correspondence for the company regarding the

building and signed for the company the notice to the plaintiffs to quit. The president testified that whenever Burton Smith went ahead with anything in connection with the building, he was acting for the company in so doing, and that whatever he did in that regard the company stood back of, and that neither the company nor the board of directors had ever questioned but when acting in relation to the building in question he was acting within the scope of his authority. The company received and had the benefit of all rents paid on the building, and it received, after the notice to quit and before the defendants entered the premises, October 5, 1919, a check for the September rent, which was retained until December 2, 1919, and returned to the plaintiffs.

It was for the jury to say, under the circumstances, whether Burton Smith had authority to make a lease, express or implied, and whether his actions had been ratified by the directors.

The charge of the court was in full accord with the settled law of this State. *Roebling's Sons* v. *Barre & Montpelier T. & P. Co.,* ·76 Vt. 131, 56 Atl. 530; *Foot* v. *Rutland & Whitehall R. R. Co.,* 32 Vt. 633; *Bank of Middlebury* v. *R. & W. R. R. Co.,* 30 Vt. 159; *Conant* v. *Bellows Falls Canal Co.,* 29 Vt. 263.

[5]   The defendants excepted to the charge on the further ground that the court said that the quarters were in the possession of the plaintiffs from June, 1918, to October 5, 1919, although they did not continue the business in person, but through some third person. This exception is without merit. O'Brien was in occupancy of the premises, under an option to purchase, whereby he paid in excess of the rental paid by the plaintiffs to the defendants the sum of ten dollars per month for the use of the equipment, with the understanding that when they received the written lease they would sublet to him. This was fully known to the defendants and approved of by them. They received the rent from the plaintiffs and regarded them as their tenants.

[6, 7]   The court charged the jury that a tenancy at will is terminated by notice to quit, but that the tenant, after such notice, has a reasonable time, in view of all the circumstances, to secure other quarters and remove his property from the premises before the landlord is entitled to actual possession, and that the reasonable time contemplated will vary with the ·nature of the occupancy, and the property to be removed, and the means at

hand for effecting such removal. The defendants saved an exception because the court failed to charge that the jury could consider not alone whether there was a reasonable time between the date of the notice to quit and taking possession, but between the notice to quit and some later date than the time of taking possession. The charge was in accord with the law as laid down in *Amsden* v. *Blaisdell*, 60 Vt. 386, 15 Atl. 332, and the doctrine of that case is not disturbed by the decision in *Mayo, Admr.* v. *Claflin*, 93 Vt. 76, 106 Atl. 653. On the contrary, the former case is cited approvingly in the latter case. This exception has no force under the circumstances, for the further reason that it appears that the court submitted to the jury the question as to whether the talk between the Edmunds Brothers and Burton Smith in March, 1919, resulted in completed negotiations, and the jury reported that it resulted in a valid oral lease for one year. This being the case, the question of a tenancy at will was removed from the consideration of the court, the parties having adopted a rule of law for the case which was followed by the trial court, and the exception is without force.

[8, 9]   The defendants made a motion in arrest of judgment on the ground that the result of the talk between Edmunds Brothers and Burton Smith in March, 1919, relative to a new lease, created in effect a tenancy at will only, and that damages could be assessed only on that basis, and not on the basis of a right to remain in possession for the balance of the year, and that the verdict, including damages, based upon a valid oral lease for one year, was not valid under the pleadings in the case. This motion was overruled, and the defendants bring their exception to this Court.

True it is that by the provisions of G. L. 2744, estates or interests in lands created or conveyed without an instrument in writing, signed by the grantor or by his attorney, shall have the effect of estates at will only; and, had the point been made seasonably in this case, it is undeniable that the lease in question must have been treated as having created a tenancy at will. But the exceptions show that no question was made during the trial but that, if an oral agreement was made between the plaintiffs and the defendants, as the plaintiffs claimed, there was a valid lease for one year, and that the plaintiffs in such case would be entitled to possession until the end of the year. This view of the law was adopted by the court after specific statements by counsel for

the defendants in this regard, and no other claim or suggestion in this respect was made during the trial. No claim was made that an oral lease would be only a tenancy at will, or that G. L. 2744 had any application to the case, until after verdict. In the argument of the motion to set aside the verdict counsel for the defendants, for the first time, made claim as to the effect of the statute and urged that their requests to charge were such as to call this to the attention of the court regardless of the claims previously made on trial.

The defendants argue that their request to charge that the plaintiffs were tenants at will brought before the court the question that is involved in the motion in arrest, but this is not so, for the record shows that the statute in question was not then called to the attention of the court, and that the point as then made related only to holding over after the expiration of the former lease.

The defendants finally made claim that the special verdict that there was a valid oral lease for one year furnished the basis for the assessment of damages, and that the judgment rendered thereon was therefore based upon an erroneous verdict, which was contrary to law.

It is well established that a motion in arrest only reaches defects in the pleadings and verdict. *Waite* v. *Starkey,* 68 Vt. 181, 34 Atl. 692. It is likewise true that the motion must be heard and determined upon the record alone, and that the error so appearing must be such as would render the judgment erroneous, notwithstanding the verdict. *Noyes, French & Fickett* v. *Parker,* 64 Vt. 379, 24 Atl. 12. It has also been held that a judgment cannot be arrested because the evidence does not show any legal ground of recovery. *Trow* v. *Thomas,* 70 Vt. 580, 41 Atl. 652. It is likewise the law in this State that, though a motion in arrest for defects in the verdict is sustainable, it stands like a motion in arrest for defects in the pleadings, and must be tested by what appears on the face of the strict record, unaided by the evidence which is no part of the record. *Hubbard* v. *Rutland Railroad Co.,* 80 Vt. 462, 68 Atl. 647. Another case holds that a motion in arrest reaches only defects apparent on the face of the strict record, and so can reach neither the specifications nor matters shown only by a transcript of the evidence. *Boville* v. *Dalton Paper Mills,* 86 Vt. 305, 85 Atl. 623. Of like import is *Mont-*

*pelier & Wells River R. R. Co.* v. *Macchi,* 74 Vt. 403, 52 Atl. 960, and *State* v. *Warner,* 69 Vt. 30, 37 Atl. 246.

From the foregoing decisions of our own court it is apparent that the defendants gain nothing by their motion in arrest. The case stands no differently than it would have done had the defendants discovered in season to make a motion in arrest, and not earlier, a decision that would have been fatal to the plaintiffs' case, had they brought it forward during the trial. The language of the court in *Bagley* v. *Cooper,* 90 Vt. 576, 99 Atl. 230, seems pertinent here: ''Whatever we may think of the theory on which the parties finally tried their case and were content to have it submitted to the jury, it is futile for either now to urge that such theory of the law was erroneous.''

*Judgment affirmed.*