WILLIAM T. SIMONDS ET AL. *v.* ROBERT E. BISHOP.

January Term, 1938.

Present: POWERS, C. J., SLACK, MOULTON and SHERBURNE, JJ.

Opinion filed February 1, 1938.

344

*Jones & Jones* for the defendant.

*Philip M. M. Phelps* for the plaintiff.

SLACK, J. This is an action of tort for the conversion of hay. The plaintiffs had a verdict and judgment below and the case is here on defendant's exceptions to the refusal of the court to direct a verdict for him, to its charge, its failure to charge as requested and its denial of his motion to set aside the verdict.

The undisputed evidence shows that on January 8, 1935, the defendant entered into a contract, in writing, with one Barrows and his wife to sell them a farm therein described, located in Benson, Vt., together with the personal property thereon, and to execute and deliver to them a good and sufficient warranty deed of the farm and bill of sale of the personal property when the purchase price with interest thereon had been fully paid. Said contract provided that Barrows and his wife should have the use and occupancy of said premises during such time as they fulfilled their part of such agreement, but no longer, and that upon their failure to do so they should forfeit all right and title therein and whatever they had paid toward the purchase price. Other provisions of the contract not here material are not noticed.

The Barrows took possession of said property, under and by virtue of such contract, the latter part of March, 1935, and continued to operate it under the terms thereof until about the 25th of the following December when Barrows notified Bishop that he "didn't want the farm any longer * * * wanted to give it up," gave his contract back to Bishop and the same was then and there terminated. Prior to that time Bishop received checks for 40 per cent of the milk money which were payable to him and were applied on the purchase price of the property; subsequently he received pay for all of the milk. After the termination of that contract Bishop and Barrows entered into an oral agreement under which Barrows was to remain on, and operate the farm until March 1, 1936, for which he was to receive house rent, fuel, milk, twenty dollars per month for his grocery bills and one-half of the net income from the farm after deducting such grocery bills and certain bills which Bishop was to pay. Barrows cut the hay on said farm and put it in the

barns the summer of 1935. On August 17 of that year he gave the plaintiffs a mortgage thereon to secure the payment of a demand note of even date, which mortgage was duly recorded, and plaintiffs gave Barrows permission to feed such hay to the cattle on the farm, which permission never was expressly revoked, although Barrows appeared to have considered it as terminated when his first contract with Bishop was abandoned. At the time that contract was terminated, or soon after, Barrows told Bishop about the mortgage. The plaintiff, Russell Simonds, testified that around the 25th of December, 1935, he learned that Barrows was to leave the farm, and immediately saw Bishop and told him about his mortgage; that Bishop acknowledged that he knew about it, and told him that it would not do him any good because Barrows had no right to give it; that Bishop then offered to show him his original contract with Barrows, but he told Bishop that he did not care to see it and "went along," all of which was denied by Bishop. Barrows continued to feed the hay to the stock on the farm until he moved away, the last of February, 1936. The following April the plaintiffs commenced proceedings to foreclose their mortgage and discovered that the hay covered thereby had been disposed of, whereupon this suit was brought.

No question is made but that at the time plaintiffs took their mortgage they gave Barrows permission to feed the hay to the cattle on the farm, but for how long a time was in dispute. The plaintiffs claimed that that right terminated when Barrows abandoned his original contract with Bishop and turned the property back to him, while defendant claimed it continued as long as Barrows remained on the farm irrespective of the arrangement under which he was there. The only direct evidence regarding this was the testimony of Barrows which was as follows:

> "Q. After you mortgaged this hay to Mr. Simonds in August did you have permission from him to feed it to the cattle?
> A. I did.
> Q. You did?
> A. Yes.
> Q. Did he ever revoke that permission?
> A. Sure he did.

Q. When did he revoke that permission?

A. When I gave up possession of the farm.

Q. When did he tell you not to feed any more hay to these cattle?

A. He didn't tell me, he didn't have to.

Q. He didn't tell you then?

A. No, he didn't tell me, knew the contract called for that.

Q. So he gave you permission in August to feed that hay to the cattle?

A. As long as I was there.

Q. But he never said anything more to you about it?

A. He said nothing more about it."

The plaintiffs, as we have seen, as soon as they learned of the changed relations between Barrows and Bishop notified the latter of their mortgage. That they had authority to limit the waiver of their rights under their mortgage to a certain time cannot be doubted. Whether they could revoke an unrestricted waiver of such rights we need not, and do not consider since no one is affected thereby but the parties to this suit, and they tried the case below, and have argued it here, upon the theory that such permission could be revoked. In the circumstances, whether right or wrong, that has become the law of the case. *Perkins* v. *Vermont Hydro-Electric Corp.*, 106 Vt. 367, 417, 177 Atl. 631; *Gentes* v. *St. Peter*, 105 Vt. 103, 163 Atl. 569; *Bagley* v. *Cooper*, 90 Vt. 576, 99 Atl. 230; *Edmunds Bros.* v. *Smith et al.*, 95 Vt. 396, 407, 115 Atl. 187. Hence, the first question was whether the waiver by plaintiffs, either by the terms thereof or by revocation by them, terminated in December, 1935. On the evidence this was clearly a jury question. It is true, as argued by defendant, that Barrows owned the hay, but if he turned it over to Bishop in December, 1935, and Bishop accepted it and used it, either himself or through Barrows, under any kind of an arrangement, he would be liable for it in this action, though plaintiffs made no attempt to stop him; and this would constitute an affirmative act within the meaning of *Dansro* v. *Scribner et al.*, 108 Vt. 408, 187 Atl. 803. Since the hay had been disposed of when this suit was brought so that a demand

therefor could not have been complied with, a demand and refusal were not necessary. *Eastman* v. *Jacobs,* 104 Vt. 536, 162 Atl. 382, and cases cited. Defendant's motion for a directed verdict was properly denied.

 The court charged the jury, in effect, that if in December, 1935, Barrows surrendered the property, including the hay, to Bishop, turned it over to him, and Bishop accepted it and assumed dominion over it, undertook to say from that time on what should be done with it, and the hay was thereafter used so that it was not available when plaintiffs attempted to foreclose their mortgage, there was a conversion of it for which defendant would be liable. The defendant excepted to this part of the charge, and requested the court to charge that "If Barrows turned the hay back, that Bishop did not accept it but made different arrangement with Barrows, there would be no conversion," and excepted to its failure to do so. The defendant does not point out wherein he claims that the charge as given was faulty, but insists that since the court charged as it did, it erred in not telling the jury that if the facts stated in the charge were not proved there would be no conversion.

While it is the duty of the court, without request, to charge upon all essential parts of the case, *Merrihew's Admr.* v. *Goodspeed,* 102 Vt. 206, 215, 147 Atl. 346, 66 A. L. R. 1109, and cases cited, it is not bound to make every conceivable comment on the evidence. See case last cited. When, as it did here, the court clearly and accurately tells the jury what is necessary for a plaintiff to prove in order to recover, it is not required to tell them that if he fails to prove such things, or any of them, he cannot recover. The exception is without merit.

All that defendant says in his brief regarding the court's refusal to set aside the verdict is that this motion should have been granted upon the same grounds urged in support of the motion for a directed verdict. What is said respecting that motion disposes of this one.

*Judgment affirmed.*