WOOD v. THE CHICAGO, MILWAUKEE & ST. PAUL R'Y CO.

1. **Railroads**: CONTRACT TO FURNISH CARS: AUTHORITY OF STATION AGENT.   Where a railroad company authorizes a station agent to contract for the transportation of perishable property (potatoes in this case) at a given rate, such authority, unless restricted by some rule or instruction of the company, carries with it the power to bind the company by an agreement to furnish cars for such transportation on a specific day.

2. ———: APPARENT AUTHORITY OF STATION AGENT: NOT LIMITED BY SECRET INSTRUCTIONS.   A railroad company, by placing an agent in charge of its business at a station, and empowering him to contract for the shipment of property, holds him out as possessing the power to contract with reference to all the necessary and ordinary details of the business, including the authority (in this case) to contract to furnish cars for the shipment of perishable property by a day named; and the com-

| | |
|---|---|
| 68 | 491 |
| 86 | 617 |
| 68 | 491 |
| 109 | 554 |
| 68 | 491 |
| 116 | 186 |
| 68 | 491 |
| 130 | 383 |

pany may not, for the purpose of avoiding liability on a contract made by such agent within the apparent scope of his authority, show that in making it the agent acted in violation of instructions of which the shipper had no notice. *Wood v. The Chicago, M. & St. P. R'y Co.*, 59 Iowa, 196, overruled.

3. ————: NEGLIGENCE IN SHIPPING GOODS: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. Where different minds might from the evidence fairly arrive at different conclusions as to whether plaintiff was free from contributory negligence, the court properly submitted the question to the jury.

4. **Instruction:** NOT RELEVANT TO ISSUES. An instruction not relevant to any issue in the case, though correct as an abstract proposition of law, should not be given.

5. **Railroads:** DELAY IN SHIPPING POTATOES: DAMAGE BY FREEZING: LIABILITY. If a station agent of a railroad company makes an oral contract for the shipment of perishable property (potatoes) by a certain day, and he has express authority to make it, or is held out by the company as having such authority, and the shipper has the property at the station and offers it for shipment at the time named in the contract, but the company does not receive it, nor within a reasonable time thereafter furnish cars for its shipment, and injury occurs to it (by freezing in this case) in consequence of such failure, the company is liable for such injury.

6. **Contract:** FAILURE TO PERFORM: CONSEQUENT INJURY: PROXIMATE CAUSE. The party to a contract who fails to perform is responsible for such consequences of his failure as must have been contemplated by the parties when they entered into it, though they are the immediate results of intermediate causes. See opinion for illustrations.

*Appeal from Delaware District Court.*

WEDNESDAY, APRIL 7.

PLAINTIFF claims damages on account of an alleged failure by defendant to receive certain property for transportation. He alleges in his petition that on the thirteenth of October, 1879, he entered into a verbal contract with defendant, whereby it agreed to receive and ship for him two car loads of potatoes from Enfield, a station on its road, in Clayton county, to Denison, Texas, at 83 cents per 100 pounds; that, by the terms of the agreement, the property was to be received by defendant, and shipped on the seventeenth of Octo-

ber, and that on that day plaintiff had the property at said station ready for delivery, and there offered to deliver it to defendant, and demanded that defendant then receive and ship the same, but that defendant neglected and refused to furnish storage or cars for the transportation thereof, or to ship the same, by reason of which plaintiff was compelled, for his own protection against damage, to find storage for the property in as convenient a place as possible, in the vicinity of defendant's depot at said station, and that he used due diligence in protecting the same, and that from day to day thereafter he requested defendant to receive and ship the property, but that it neglected and refused to do so until the second day of November following, when it furnished cars, and demanded of plaintiff that he at once load the property upon them, which he did, and that, owing to the coldness of the weather at the time, ten bushels of the potatoes were frozen before the cars were loaded, and were thrown away; that said cars were not moved until the next day, and when the property arrived at its destination it was injured and damaged by freezing to such extent as that it was nearly valueless. And it is charged that the loss was occasioned by defendant's failure and refusal to receive and transport the property until the season was so advanced that it was necessarily exposed to frost.   There was a verdict and judgment for plaintiff.   Defendant appeals.

*W. A. Hoyt* and *Noble & Updegraff*, for appellant.

*Blair & Norris*, for appellee.

REED, J.—Plaintiff claims to have made the alleged verbal contract with defendant's station agent at Enfield.  The agent was examined as a witness, and testified that he did not agree to have cars at the station to ship the potatoes to Denison at any definite time. There was evidence, however, which would warrant the finding that he did agree that the necessary cars for

1. RAIL-
ROADS: con-
tract to fur-
nish cars:
authority of
station agent.

the transportation of the potatoes would be at Enfield on the seventeenth of October, and that he would receive and ship them on that day. It is undisputed that on the thirteenth of October he informed plaintiff that he could give him a rate of 83 cents per 100 pounds on potatoes, by the car load, to Denison, Texas, and that plaintiff accepted that rate. After this arrangement was entered into, plaintiff made arrangements with the farmers, from whom he purchased the potatoes, to deliver them at Enfield on the 17th, and on that day he received at the place a sufficient quantity to load two cars, but defendant did not on that day have cars at that station on which to load them. Plaintiff thereupon stored a portion of the potatoes in a cellar, and the balance in an elevator and warehouse convenient to the depot. Between that day and the second of November he, on a number of occasions, requested the station agent to receive and ship them, but cars were not furnished for their transportation until the latter date. On that day he was informed by the agent that two cars were at the station, on which he could load the potatoes; but if they were not loaded in time to be sent out on the next train, which would pass that station on the morning of the 3d, the cars would be sent back empty. He accordingly loaded them on that day, and they were sent forward the next morning. Before they were sent forward, however, he was required to and did pay the freight to their destination, and the agent issued to him a bill of lading by which defendant undertook to transport the property to Davenport, in this state, which is the end of its line, and there deliver it to a connecting carrier. This bill of lading also recited that the property was received at the owner's risk. The weather was warm and pleasant on the seventeenth of October, and so continued until about the 30th, when it turned cold, and when the potatoes were loaded upon the cars it was freezing, and it remained quite cold until after the cars were sent forward. The potatoes were covered in the cars with straw and blankets; but when they arrived at Denison it was found

that they had been badly frozen, and much the greater part of them were rendered entirely worthless. Plaintiff first applied to the agent for information as to the freight charges to Denison before he purchased the potatoes, and the latter communicated with defendant's general freight agent on the subject, and the rate of 83 cents per 100 was offered to plaintiff, in compliance with instructions given by him to the station agent.

The cars on which the potatoes were shipped belonged to the carrier whose line connected with defendant's line at Davenport, and the custom of the companies was, when freight was to be received on defendant's line for transportation over the line of the connecting company, for the latter to furnish the cars on which to load the same at the place of shipment, and the failure of defendant to deliver cars at an earlier date for the shipment in question was occasioned by the failure of the connecting company to furnish them. The district court instructed the jury that, before plaintiff would be entitled to recover, he must prove either (1) that the station agent had express authority from defendant to make the alleged parol contract; or (2) that he was held out by defendant as possessing such authority; or (3) that defendant, with full knowledge of the facts, had ratified the contract. Defendant excepted to this instruction. It also objected to the evidence offered to establish the making of the contract by the agent, on the ground that his authority was not shown. The overruling of this objection, and the giving of this instruction, are now assigned as error.

It is contended that there was no evidence which had any tendency to prove, either that the agent had authority to make the alleged contract, or that he was held out as having such authority, or that defendant had ratified the contract. In a former opinion filed in the case we sustained this view. A rehearing was granted, however, and upon a re-examination of the record we have reached the opposite conclusion. The agent, it is true, testified, in general terms, that he had

no authority to make contracts with shippers for cars at a definite day. He did not testify, however, that he was restricted in that regard by special instructions from his employer, or by any general rule of the company. His statement may have been the mere expression of his opinion or conclusion as to the extent of his authority. At least, it is susceptible of that construction, and it is by no means conclusive on the question. As stated above, he was empowered by the general freight agent of defendant to contract for the transportation of such property as plaintiff desired to ship to Denison, Texas, at 83 cents per 100 pounds. This instruction was given in contemplation of the fact that, as the property was to be delivered to the connecting carrier for transportation over its line, it should be loaded upon cars belonging to that company. It therefore necessarily empowered him to contract for the shipment at a future date. It was also given in contemplation of the nature of the property to be shipped; and, in the absence of special instructions or restrictions, empowered him to make such contracts, as to the time of shipment, as the nature of the property required. Suppose the company should authorize an agent to contract with a shipper for the transportation of fresh meat to a distant market in hot weather. It would hardly be contended, in such case, that the agent was not empowered to contract that the property should be carried in a car specially adapted to the transportation of that kind of property, or that he was not authorized to bind his principal by an agreement to receive and transport it at a particular time. The authority to make the engagement, if unrestricted, would carry with it the power to contract with reference to all the details of the transaction. The property in question was not as perishable, perhaps, as a car load of fresh meat would be in midsummer. It was liable, however, to be greatly injured or entirely destroyed by freezing. When the agent was empowered to contract for its transportation, weather sufficiently cold to injure or destroy it, if not properly protected, was liable to

occur at any time. It was therefore of the highest import-ance to the shipper that a definite time should be fixed for the shipment; and unless the power of the agent was limited by some rule or instruction of the company, the authority conferred upon him to contract for the transportation of the property carried with it the power to make such agreement with reference to the time when it should be received and shipped as the necessities of the case demanded. The dis-trict court was therefore warranted in submitting to the jury the question whether he had express authority to make the alleged contract.

It was also warranted in submitting the question whether he was held out by defendant as authorized to make such con-tract. He was the only representative of the company at that station. He was placed there for the purpose of transacting its business at that place. He was authorized to contract, in its name, for the transportation of property of the kind in ques-tion, and had authority to receive it for shipment. Shippers had the right to assume, in the absence of information to the contrary, that he had authority from his principal to contract for the doing of whatever was reasonably necessary to be done in the shipment of such property. By placing him in charge of its business at that station, and empowering him to contract for the shipment of such property, it held him out as possessing the authority to contract with reference to all the necessary and ordinary details of the business. Within the range of that business, he was a general agent. 2 Redf. Railways, 141.

*2.———: ap- parent au- thority of sta- tion agent: not limited by secret in- structions.*

We are aware that what is here said is not in harmony with our holding in *Wood v. Chicago, M. & St. P. R. Co.*, 59 Iowa, 196. We entertained such grave doubts, however, as to the correctness of our holding in that case, that we announced to counsel, when this rehearing was granted, that we would review the question upon the final hearing. Our conclusion is that that case, in so far as it holds that the

defendant, for the purpose of defeating its liability upon a contract made by a station agent within the apparent scope of his authority, may show that in making it the agent acted in violation of instructions of which the shipper had no notice, ought not to be followed. Shippers, as a rule, are required to deal with these agents in making contracts for the shipment of property. They are agents of the company's own selection, and are employed to represent and act for it; and to hold that contracts entered into by them, within the apparent scope of their authority, may be defeated by secret limitations upon their authority, would impose, in many cases, very grievous hardships upon those who are compelled to deal with them. The soundest considerations of public policy demand that the rule should be otherwise; and this view is well sustained by the authorities. See 2 Redf. Railways, 139-141; Hutch. Carr., § 269; *Deming v. Grand Trunk R. Co.*, 48 N. H., 455; *Pruitt v. Hannibal & St. J. R'y Co.*, 62 Mo., 527; *Harrison v. Missouri Pac. R'y Co.*, 74 Mo., 364.

In the view we have taken of the question already discussed, the question whether there was any evidence of a subsequent ratification by defendant of the acts of the agent is not very material. But, without discussing that question, we may say that, in our opinion, there was evidence which fairly entitled plaintiff to have it submitted to the jury.

II. The district court instructed the jury that, if plaintiff was guilty of any negligence, or want of ordinary care in loading the potatoes, which contributed to the injury and damage of which he complains, he could not recover. Counsel for defendant concede that the instructions on this question are abstractly correct. They contend, however, that upon the undisputed evidence the court should have ruled that, as matter of law, plaintiff was guilty of such negligence in loading the potatoes on the cars at the time he did load them as defeated his right to recover for any injury which occurred to them after that time. As stated above, the weather was cold and freezing

*3. ——: negligence in shipping goods: contributory negligence: question for jury.*

at the time the cars were loaded. Some of the potatoes which were stored in the warehouse were already frozen. Plaintiff, at the time, expressed to the station agent some apprehension that they would freeze if loaded at that time. But the agent gave it as his opinion that they could be protected from freezing if properly covered in the cars with straw. Plaintiff did accordingly cover them with straw and blankets and he testified that he made the best provision for their protection which he was able to make under the circumstances. Under this evidence, the question whether he acted negligently or with due care was for the jury. Different minds might fairly arrive at different conclusions from it as to whether due care was exercised in loading the property. *Whitsett v. Chicago, R. I. & P. R'y Co.*, 67 Iowa, 150.

III. The district court refused to give an instruction asked by the defendant, to the effect that the duties and obligations of a common carrier with respect to the goods commence with their delivery to him, and that the delivery to him must be complete before he is charged with the duty of seeing to their safety. As an abstract proposition, the instruction is probably correct. But we think it is not applicable to the case made by the pleadings and evidence. Plaintiff does not complain that defendant was guilty of any breach of its duties as a common carrier after it received the property into its possession. His complaint is that it violated its contract to receive and transport it at a particular time, and that it refused to receive it within a reasonable time thereafter, and that the injury resulted from this violation of contract and refusal to receive the property. The cars were sent forward by the first train after they were loaded, and it was not claimed that thereafter defendant was guilty of any wrong or negligence with reference to the property, and no question arose in the case to which the instruction was pertinent.

*4. INSTRUCTION: not relevant to issues.*

IV. The court instructed the jury, in effect, that if the station agent made the alleged verbal contract, and he had

5. RAILROADS: delay in shipping potatoes: damage by freezing: liability. express authority to make it, or was held out by defendant as having such authority, and plaintiff had the potatoes at the station at the time specified in the contract, and offered to deliver them, but defendant did not receive them, or within a reasonable time thereafter furnish the cars for their shipment, and the injury to them occurred in consequence of its failure or refusal to receive and ship them within a reasonable time after that date, it was liable for the damages occasioned by such injury. The objection urged against these instructions is that the injury which the property sustained after it was loaded upon the cars was not the proximate consequence of defendant's neglect or failure to receive and ship it at an earlier date, but was occasioned by the elements and plaintiff's act in loading it upon the cars at the time he did. This doctrine was also expressed in instructions asked by defendant at the trial, but which were refused by the court. The maxim invoked by defendant, while it is well settled and familiar, is not always of easy application to the facts of the case at hand. The general doctrine is that a party is responsible only for such consequences as are the natural and immediate result of his own fault. But it is often difficult to determine whether a particular result is the natural and proximate consequence of a particular act, or whether it should be attributed to some intermediate cause. It is well settled, however, in cases of contract, that the party in fault is responsible for such consequences of his failure as must have been contemplated by the parties when they entered into the agreement,

6. CONTRACT: failure to perform ; consequent injury : proximate cause. even though they are the immediate results of intermediate causes. Thus, if a carrier should contract for the transportation of a car-load of fresh meat to a distant market in hot weather, and should agree to furnish a refrigerator car at the place of shipment, at a particular time, for its reception, and the shipper should produce the meat at that place at the time agreed upon, ready for shipment, but the carrier should fail

to produce the car, and there was at hand no suitable place for the storage of the property, and it should become tainted and damaged by its exposure to the weather, in that case the immediate cause of the injury would be the exposure of the meat to the weather, which would be the act of the shipper. The carrier would be responsible for the injury, however, for the reason that the parties had that matter in consideration when they entered into the agreement. The undertaking of the carrier, in effect, would be that the property should not be exposed to that danger, and the injury would be a proximate consequence of his breach of that undertaking.

In the present case, it was well known to the parties, when they made the contract, that, unless the potatoes should be shipped at an early date, they would be liable to be injured or destroyed by freezing. The danger was one which would arise in the ordinary course of nature in this climate, and it must be presumed that the parties had it in consideration, and intended to guard against it, when they entered into the agreement. If defendant had received and shipped the potatoes at the time agreed upon, or within a short time thereafter, the injury would not have occurred. Plaintiff bought the potatoes for the market to which they were afterwards consigned. He made efforts, between the seventeenth of October and the second of November, to dispose of them, but was unable to find a market for them. He made the best provision practicable for their protection during that time. If those stored in the elevator and warehouse had been permitted to remain there during the winter, they would certainly have been frozen, and there was no other place at the station where they could safely have been stored. Under the evidence we think it was properly left to the jury to determine whether their exposure to the danger, and the injury they sustained, were the proximate consequences of defendant's breach of the contract; and we also think that the finding of the jury on that question is fully

sustained by the evidence. Other questions are argued by counsel, but, in the view we have taken of those considered in this opinion, they are not material.

We deem it proper to say that this is not a second appeal in the case between the same parties in 59 Iowa, 196.

The judgment will be

AFFIRMED.