O. L. WHITLATCH, Appellee, v. BOND & MORTGAGE COMPANY OF IOWA, Appellant.

**CORPORATIONS:** Officers—Parol Authority—Course of Dealing. The
1   authority of an officer of a corporation to do an act may be conferred by parol, and may be inferred from circumstances or implied from the acquiescence of the corporation or its manager in a general course of business.

**BILLS AND NOTES:** Consideration—Compromise of Dispute. A
2   promissory note which is given in compromise of a bona-fide dispute as to liability under a valid writing is supported by a sufficient consideration.

Headnote 1.   14a C. J. pp. 366, 383, 406.   Headnote 2.   8 C. J. p. 235.

*Appeal from Butler District Court.*—M. F. EDWARDS, Judge.

DECEMBER 11, 1924.

ACTION at law, on a promissory note to plaintiff, signed by defendant, by H. W. Garner, its vice president. Trial to the court, without a jury. Judgment against defendant for approximately $5,000, being the face of the note, with interest. Defendant appeals.—*Affirmed.*

*C. H. Johnston,* for appellant.

*C. G. Burling* and *W. C. Shepard,* for appellee.

PRESTON, J.—The defenses were: denial of the genuineness of the signature of the defendant; denial of the execution of the note; denial of authority of the vice president to execute the

1. CORPORATIONS: officers: parol authority: course of dealing.

same; and the allegation that the note sued upon was *ultra vires,* and without consideration. Plaintiff replied, alleging that the note was authorized, was for a valuable consideration, and is not *ultra vires;* that defendant is estopped from denying the validity of the note on any of the grounds set up in the answer; that defendant ratified the acts of its officers; and that they are, therefore, now binding upon it. The trial court found that the note declared on is genuine, just, due, and unpaid, and is the property of plaintiff.

There was a conflict in the evidence as to the execution of the note and the genuineness of the signature. As to such, the finding of the trial court has the force of a jury verdict, and is conclusive. This is true also, of course, as to other fact questions upon which there is a conflict. If Garner had authority to execute and deliver the note, this will dispose of some other questions without extended discussion, and be practically decisive of the case, and work an affirmance. It may be well to state first the situation in a general way, and then take up the evidence as to the authority, and other questions. The facts which we shall state are either undisputed, or upon conflicting evidence, which was for the trial court.

In February, 1920, plaintiff was a banker, at Fremont, Nebraska, and had been purchasing commercial paper of the defendant since 1918. At the time the note sued on was executed, March 12, 1921, he conducted a bank at Allison, Iowa. Defendant is located at Des Moines. The note in suit was to run one year. It represents the aggregate amount of four notes purchased by plaintiff from defendant, which were due and unpaid. Prior to February, 1920, defendant had indorsed paper sold by it to the plaintiff. On February 24, 1920, after some prior correspondence in regard to the matter, defendant, by its president, Mr. C. H. Johnston, wrote plaintiff that the company had discontinued its practice of indorsing notes sold by

it, but that it gave each purchaser an agreement which amounted to practically the same thing as an indorsement, for the reason that all notes sold by it on that plan were paid by the company on the date they became due, whether the company had received the money or not.    The four notes above referred to were not indorsed by the defendant; but they, with *other notes*, were purchased pursuant to the agreement stated, with a stipulation that the defendant would collect the notes when due, without expense to the plaintiff, and that plaintiff might draw upon defendant, on the due dates, for the amount of the notes. A draft was made upon the defendant for the amount of the note first maturing, and it was paid, as agreed.    This is true also as to the note which next became due.    Drafts were made upon the defendant for payment of some of the four notes as they became due, according to the purchase agreement; but the drafts were not paid, and neither were the notes paid.    The written agreement given by defendant to purchasers and to this plaintiff recites that the agreement is given in connection with the note in suit, which is described, and that it is given to plaintiff to guarantee to him the payment of certain notes now held by him on the attached schedule (the four notes before referred to); and the defendant agreed, at the time the note should become due, to substitute a note or notes of like amounts, signed by sundry persons, provided that the note or notes so substituted should meet with the approval of said Whitlatch, and that, upon failure to so agree, then Whitlatch agreed, upon request of defendant, to grant an extension of twelve months' time from the due date of said note or notes, defendant agreeing to give a new note at that time for a period of twelve months, and further, that, if defendant should be able to collect on the notes named, then and in that event, such collection as made should be applied on the discharge of the principal of said note given to Whitlatch by the defendant.    There was some correspondence between the parties before the execution of the note, as there was after its execution and maturity.    Some of the letters from the bank to plaintiff were signed by C. H. Johnston, president of defendant company.    About the time it was due, defendant so wrote plaintiff, requesting an extension of twelve months and the acceptance of a new note for the one in suit,

in accordance with the agreement. A similar letter was so written three or four weeks later. Plaintiff wrote that he was willing to grant the extension and permit a renewal. The note was not renewed; and some time later, plaintiff was informed by defendant that the matter was in the hands of its board of directors. On March 11th, the day before the note was executed, plaintiff went to Des Moines, and took up with defendant's officers the amount due him upon the four unpaid notes. At that time, there were at the offices defendant's president and its soliciting agent; and its general counsel was consulted. These three and Mr. Garner were on the board of directors, and, as we understand the record, constituted a majority of the board. Mr. Johnston testifies that the business was controlled by the board of seven directors. At the meeting just referred to, on March 11th, plaintiff informed these officers that, unless the company's liability under its agreement with him was adjusted, he would bring suit against the company. The matter was discussed, and Mr. Johnston suggested that defendant give its note to the plaintiff for the amount due on all the four notes, but stated that he wished to go over the matter more thoroughly with the officers, and that he especially wished to take the matter up with the vice president, Mr. Garner, who was the mainspring of the company, but who was then out of town, and would not return until morning. The next day, plaintiff returned, and met Mr. Garner, who told him that Mr. Johnston, the president, had gone over the matter with him (Garner), and that the company had decided to give the plaintiff its promissory note for the amount of its liability on the four notes. The new note, with an agreement as to its payment and extension, was accordingly prepared by the vice president in the office of the defendant company; the signature of the company was affixed thereto by the vice president; the four old notes were returned to the defendant; and the new note, the note in suit, was delivered to plaintiff. In September, 1921, plaintiff wrote defendant, asking the payment of the semiannual interest then due on the note in suit; and in response, the interest was paid by the defendant to plaintiff on September 24, 1921.

It should have been stated that, prior to the execution of this note, and while plaintiff had been purchasing paper from

the defendant, he had become personally acquainted with its president, vice president, counsel, and Premer, the field man. This acquaintance arose through plaintiff's business dealings with defendant. Defendant is a corporation organized for the purpose of buying and selling commercial paper. The articles of incorporation so provide, and further, that the general nature of its business is to conduct a general mortgage and securities investment business, having the power to purchase and deal in stocks, bonds, mortgages, and commercial paper, both secured and unsecured; that, in respect to such paper, it might exercise all the rights, powers, and privileges granted by law to corporations, including the power "to do any and all acts tending to increase the value of the property at any time held by the corporation." On the day the company was organized, the board of directors, by resolution, created an executive committee, consisting of the president, Johnston, and the vice president, Garner, and two resident members; and this committee was given the general supervision of the business of the company, with power to pass on loans and securities, and perform such other acts as the business of the company might require. The two resident members were never formally chosen. From the date of organization, Johnston, as president, and Garner, as vice president and secretary, were the executive officers of the company, looking after the defendant's interests in all matters transacted with plaintiff. Johnston is a lawyer, and, at the time of the execution of the note, was a law partner with the company's general counsel, and occupied joint offices with the defendant company. The minutes of the board meetings show that, in 1919, meetings of the board of directors were to be held every two months; yet the meetings were seldom held, and were irregular. The transactions out of which this suit arose, began in February, 1920. On March 13, 1920, there was an adjourned meeting of the directors, at which there was present but one other person besides Johnston, Garner, Nesbitt, and Premer. The next meeting was on December 17, 1920, and no one was present except the four just named. The next meeting was on May 4, 1921, at which there were present the same four directors. There was a special meeting, May 9, 1921, at which the same four were present. There was no meeting thereafter until Jan-

uary 27, 1922. It thus appears that, for a year just preceding the execution of the note in suit, there had been but two meetings of the defendant's board of directors; that the first meeting following its execution was on May 4, 1921. For nearly two years preceding January 27, 1922, the four directors named seem to have had complete control and management of the company's business and full knowledge of the execution of this note and defendant's liability thereon. The minutes of the board show that, at the meeting held May 4, 1921, Johnston, the president, filed "an extended report of the affairs and condition of the company, and the meeting was devoted to a discussion of the affairs of the company." The report further states:

"A large percentage of our assets are still inactive, due to the notes which we hold. With this situation the board is already familiar."

At the May 9th meeting, the board discussed the acts of Garner and Premer in regard to the Gibford Chemical Company notes, the four notes before referred to, and gave defendant's attorney, Nesbitt, instructions as to settlements in the Gibford matters.

In a financial statement issued by the company, dated December 31, 1921, and sent to the directors and stockholders at about that time, it is shown that among the defendant's liabilities it had notes payable, amounting to $7,515.47. This amount included the note in suit for $4,515.47, leaving a balance of $3,000 even. As before stated, in its letters to plaintiff, dated February 10, 1922, and March 6, 1922, defendant recognized the validity of plaintiff's note, and its president suggested that the note be renewed. The minutes of the different meetings show that, on April 4, 1922, there was a stockholders' meeting, which was presided over by Johnston, president; and Garner, the vice president, acted as secretary. The financial statement before mentioned was presented, and it appears that the "president analyzed the various items of the statement." On April 17th, plaintiff wrote defendant about this note. On May 18, 1922, this suit was commenced. The petition was filed June 10th; answer, September 18, 1922. Other pleadings were filed, and the case was assigned to be tried November 23, 1922, and the case was tried the following day. On said November 23d, the

day the case was set for trial, the defendant's board of directors met, and passed a resolution stating that on that date there was the first notice and knowledge it had had of the execution of the note sued on; repudiated the note; and instructed the officers of the company to defend the suit then pending. It appears to us that such a claim, in view of the record before set out, is entirely inconsistent with, and contrary to, the facts. It appears that a majority of the board of directors managing the affairs of the company were present at the time the note was executed; and, without again pointing out other specific items of evidence to so show, it appears that the company not only had knowledge of this transaction, but also authorized the vice president to sign the note, and after its execution, acknowledged its validity and the company's liability, and ratified the action of the vice president in signing. It also appears that this transaction was the same as other similar transactions, and according to the usual way and custom of defendant. True, there is a conflict in the evidence at some points. Defendant's contention is that there was no one present at the time the note sued upon was executed, except plaintiff and Garner. This is conceded. It concedes, however, that, the next day after the note was signed, the vice president, Garner, advised the president of his action, and made a record of the note.

Cases are cited by appellee to the proposition that corporations must act through their officers in the transaction of their business, and that, unless the authority of an officer is specially restricted, the authority and power of a general or managing officer or agent are co-extensive with the powers of the corporation itself. We think it unnecessary to enter into any extended discussion of this proposition. The authority of the officer to do the act may be conferred by parol, and may be inferred from circumstances, or implied from the acquiescence of the corporation, or its manager in a general course of business. *Ida County Sav. Bank v. Johnson,* 156 Iowa 234, 244, 246; *Finance Corporation v. Jones,* 97 N. J. L. 106 (116 Atl. 277, 279); *Edmunds Bros. v. Smith,* 95 Vt. 396 (115 Atl. 187); *Carlquist v. Quayle,* 62 Utah 266 (218 Pac. 729, 731). Appellant concedes that the power to bind a corporation may be implied from the habit or custom of its business, but contends that the power

must come from the articles of incorporation, or by delegation of authority by it directly, unless implied from the custom. On this point they cite *Ney v. Eastern Iowa Tel. Co.*, 162 Iowa 525; *Thompson v. Des Moines Driving Park*, 112 Iowa 628. Ratification, as well as authority, may be shown by circumstances and conduct. *Sawyer v. Iowa Const. Pro. Amdt. Assn.*, 177 Iowa 218, 220, 223. The question of the authority of an agent to bind his principal is one of fact, for the jury. *Fullerton Lbr. Co. v. Snouffer*, 139 Iowa 176, 177. The question of ratification is one of fact. *Ida County Sav. Bank v. Johnson*, supra; *Ney v. Eastern Iowa Tel. Co.*, 185 Iowa 610, 618. Payment of interest may amount to ratification. 2 Thompson on Corporations (2d Ed.), Section 2023. Numerous other cases are cited on questions in regard to whether notice to officers of a corporation is notice to the corporation, and whether knowledge may be inferred from facts and circumstances; also, as to certain presumptions as to the validity of the contract, and that the officers of a corporation have told their principal what has come to their knowledge while acting for it.

Defendant had the burden to show that the contract was not authorized or ratified by the directors. *Ida County Sav. Bank v. Johnson*, supra, at 245.

The question of consideration warrants but little attention. Though defendant had not indorsed the four notes for which this note was given, if there was an honest dispute or difference of opinion as to defendant's liability, its separate agreement to pay the notes, and the giving of this note and the surrendering of the old notes, in connection with the other circumstances in the case bearing thereon, constituted a sufficient consideration.

2. BILLS AND NOTES: consideration: compromise of dispute.

It is unnecessary to discuss the other questions argued. The judgment is—*Affirmed*.

ARTHUR, C. J., and EVANS and STEVENS, JJ., concur.