FIRST NATIONAL BANK OF MASON CITY, Plaintiff, v. CEMENT PRODUCTS COMPANY et al., Appellees; FRANK P. CORRICK, Receiver, Appellant.

No. 39745.

DECEMBER 13, 1929.

*Whitney, Whitney & Stern,* for appellant.

*Smith & Feeney* and *Cornwall & Cornwall,* for The Cement Products Company and Ralph W. Willis, appellees.

STEVENS, J.—The First National Bank of Spencer acquired, and, at the time its affairs were placed in the hands of a receiver, held, notes aggregating more than $45,000, which were transferred to it by the Cement Products Company, a corporation also having its principal place of business at Spencer, by

indorsement without recourse. The receiver of the Cement Products Company resisted the claim of intervener, and refused to allow any part thereof. Upon hearing in the district court, said court found that one note transferred to the bank by the Cement Company was indorsed in blank, and the amount thereof was allowed. It is the claim of intervener that, at the time of the negotiation of the notes to the bank, it was orally agreed between it and the Cement Company that the latter would hold the bank harmless, and protect it from loss on said notes. Something more than a year after the transfer of the notes, J. J. Radford, president of the Cement Products Company, in writing agreed with the bank that the company "shall protect and save harmless and be and remain liable on promissory notes purchased" by said bank. Perhaps it should be here stated that the claim of intervener includes also notes alleged to have been transferred to the Peoples Savings Bank, under a similar arrangement, which later merged with the First National Bank.

The articles of incorporation of the Cement Products Company provide that the business thereof shall be managed by a board of directors, and neither the said articles nor the by-laws authorized the president to enter into or execute in its behalf contracts of the character here involved. It is contended by appellant that the president, in the negotiation of the notes, the making of the alleged oral contract, and later the execution of the written agreement, either acted with the authority of the corporation, or his acts were subsequently ratified thereby. Much of the evidence relied upon by appellant to establish the alleged oral agreement claimed to have been made contemporaneously with the transfer of the notes is of doubtful competency, and, on the whole, is not convincing. The officers of the respective corporations who transacted the business were not called as witnesses upon the trial of the case. G. C. King, manager of the Cement Products Company during the period covered by the transactions, identified the signature of Radford to the written contract, and testified that he had heard or knew of an oral agreement with the bank, but was unable to state from personal knowledge who acted for the corporation, or the terms of the agreement. Upon this point his testimony was largely in the nature of conclusions. He further testified that he heard some

talk about the matter, but was unable to give any details with reference to the matter.

Mr. Rowe, an officer of the bank, testified to the conclusion that there was an oral agreement to the effect that the Cement Products Company would hold the bank harmless for notes sold and transferred to it by indorsement without recourse. It is not shown that he is the officer of the bank with whom the transactions were conducted, or that he was present when the agreement was entered into. The testimony of these witnesses is not disputed; but the information of neither of them was obtained at first hand, and, in addition to being largely in the nature of conclusions, was mostly hearsay.

No one denies the execution of the written instrument which was signed "Cement Products Co. by J. J. Radford, President." His authority, however, to bind the corporation thereby is challenged. The record is wholly silent as to any authority conferred in any way by the corporation upon its president to execute this instrument.

It is shown that Radford and one Hammen, to a large extent, looked after the signing of papers for the Cement Company; but, as stated, no testimony was introduced tending to show that Radford was authorized in any way by the corporation to execute and sign the alleged instrument of guaranty. It is well settled in this state that the office of president of a corporation in itself confers no power upon him to bind it by contract. His power must be determined by the organic law of the corporation, or by delegation of authority by its managing officers, or be implied from the habit or custom of transacting the business of the corporation. *Ney v. Eastern Iowa Tel. Co.,* 162 Iowa 525; *Groeltz v. Armstrong Real Estate Co.,* 115 Iowa 602; *Goodman Mfg. Co. v. Mammoth Vein Coal Co.,* 185 Iowa 253; *Whitlatch v. Bond & Mtg. Co. of Iowa,* 199 Iowa 65.

The record discloses no action taken by the board of directors or other act of the corporation conferring authority upon Radford to execute the writing. More than a year elapsed after the notes were transferred to intervener before the instrument was executed. So far as the record shows, its execution was never called to the attention of, or directly approved by, the board of directors. Except for the statement of the witness King that he heard talk of the agreement, there is nothing to

show that the corporation knew of the transaction, nor is it shown that it was the custom of the corporation for its president to execute in its name agreements of the character here involved.

But it is argued by counsel for appellant that the contract was subsequently ratified by the corporation. The evidence, if any, on this point is meager and indirect. It is limited to the following minutes on the books of the corporation:

"The matter of collecting stockholders' notes now held by the company, or which may later be produced from present holders and held by the company were discussed at length."

The meeting of the board of directors at which the minutes referred to were made, was held subsequent to the execution of the contract. We find nothing in the record to show that the notes transferred to the bank or the written agreement was the subject of conversation or discussion at this meeting of the board, or that it was referred to more directly than appears in the minutes quoted. Just what notes, if any, the board of directors contemplated repurchasing is not disclosed. It would require very great liberality in the construction of this language to hold that it referred to the notes in question, or that the alleged written agreement was discussed by the board. The evidence is wholly insufficient to establish ratification.

Recovery was also asked on the theory of money had and received. What is said fully disposes of this proposition, and it need not be given any further consideration.

It is our conclusion that the evidence wholly fails to sustain any of the contentions of appellant. The order and judgment below is, accordingly, affirmed.—*Affirmed.*

ALBERT, C. J., and DE GRAFF, KINDIG, and WAGNER, JJ., concur.

MORLING, J., not participating.