NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Appellee, v. BELLE H. STECKEL et al., Appellants.

No. 41948.

October 17, 1933.

H. C. & H. C. Taylor, for appellants.

Buell McCash and A. G. Miller, for appellee.

MITCHELL, J.—On October 16, 1925, the appellant, Belle H. Steckel, and her husband, Willey J. Steckel, executed to the appellee company their promissory note in the sum of $15,000, which note was secured by a deed of trust covering 480 acres of improved real estate in Adair county, Missouri, which was owned by Belle H. Steckel. The appraisers for the appellee company at the time the loan was made, to wit, in October, 1925, appraised the land and buildings at $40,400. The note and mortgage which the appellants had given to the appellee became due on October 16, 1930. On October 4, 1930, Willey J. Steckel visited A. W. Swacker, who was a mere loan agent of the Northwestern Mutual Life Insurance Company, located at St. Louis, Missouri, and trustee under the trust deed. Steckel advised Swacker that appellants desired to deed back the farm in full satisfaction of the mortgage indebtedness. According to Steckel's testimony Swacker told him he would have to correspond with the company before he could give him a decisive answer as to whether they would take a deed or not, and promised

to do that and write to Steckel. Within a week thereafter, Steckel received a letter, dated October 9, 1930, and signed by A. G. Miller, assistant counsel for the Northwestern Mutual Life Insurance Company, which letter was introduced in evidence as Exhibit D-3, and which is as follows:

"The Northwestern Mutual Life Insurance Company,
Milwaukee, Wis.

"Oct. 9, 1930.

"Loan No. 108241

"Belle H. Steckel, et al.

"Mr. and Mrs. Willey J. Steckel,

"Bloomfield, Iowa.

"Dear Sir and Madam:

"On Oct. 3, 1930, our Finance Committee declared the above loan due and payable because of default in payment of interest, and I have been instructed to foreclose the trust deed unless said delinquency is paid.

"The loan was made to you under date of Oct. 16, 1925, for $15,000.00, payable in 5 years from date, with interest at 5% per annum, payable semi-annually, and secured by a trust deed on premises in Adair County, Missouri.

"The amount now due under said loan is the principal sum of $15,000, with interest at 5% from Oct. 16, 1929, and unless settlement is made on or before Oct. 20, 1930, I shall, in accordance with my instructions, proceed to foreclose said trust deed.

"Yours truly,

"[Signed]    A. G. Miller,

"Assistant Counsel."

Shortly after receiving the letter, Exhibit D-3, and on or about the 30th of October, 1930, Steckel went from his home in Iowa to the home office of the appellee company at Milwaukee, Wisconsin. The appellee is a mutual insurance company, transacting business in various states, engaged in the writing of life insurance and in the investment of moneys received from the premiums it collects from its policyholders. It is one of the large and outstanding insurance companies in the country, and maintains its home office in Milwaukee, Wisconsin. Mr. Steckel went into the building which was occupied by the appellee company as its home office, and, after entering the building, he went immediately to the desk which was

marked "information" desk and handed to the person in charge of said information desk the letter, Exhibit D-3. The person that the insurance company placed at the information desk in their home office, to whom Mr. Steckel had given this letter which he had received from the company, Exhibit D-3, directed Mr. Steckel to Mr. Price, who was on one of the floors above in the same building. Mr. Steckel, in compliance with the direction given to him by the person at the information desk as to the person he should see to conduct the business he had with the Northwestern Mutual Life Insurance Company, proceeded to Mr. Price's office. Mr. Price conferred with Mr. Steckel. Mr. Steckel said to Mr. Price that he wished to make a deed to the land in satisfaction of the indebtedness. Mr. Price advised Mr. Steckel, according to Mr. Steckel's testimony, that Mr. Swacker of St. Louis was better informed about the situation than they were in Milwaukee, and told Mr. Steckel to see Mr. Swacker in St. Louis and make the deal with him. Mr. Price said to Mr. Steckel that he would wire Mr. Swacker to hold up any proceedings until Mr. Steckel could see him. Mr. Steckel, after this conversation with Mr. Price, went back to his home in Iowa and made an appointment with Mr. Swacker in St. Louis. And on the 3d of November, 1930, Mr. Steckel went from his home to St. Louis to keep the appointment which he had made with Mr. Swacker. Mr. Swacker showed Mr. Steckel a wire he had received from the home office, and Mr. Swacker and Mr. Steckel then had a conversation with reference to settlement of the indebtedness. This conversation was excluded by the trial court upon objections by appellee, and appellants then offered to show by the witness Willey J. Steckel the following:

"Mr. Taylor: The defendants now offer to show by the witness, W. J. Steckel, who is now on the stand, that on November 3, 1930, in the City of St. Louis, Missouri, at the office of A. W. Swacker, this witness had a conversation with said A. W. Swacker with reference to the loan and note involved in this cause, in which conversation the said W. J. Steckel told the said Swacker that he had been to Milwaukee and had there been told to come to St. Louis and make a deal with reference to said matter with Mr. Swacker, in answer to which he said Swacker told him, said Steckel, that he had received a telegram to hold up the matter for a week or so. That the said W. J. Steckel told Swacker that he wanted to deed to the Company the land in question, being the 480 acres described in

Exhibits D-7 and D-8, in full of the debt evidenced by Exhibit P-1, and that Swacker told Steckel in answer to that that the Company would not do that, and that the said Swacker thereupon said to the said Steckel that if he would deed the .land to the Company and pay to the Company the sum of $750.00 the Company would accept the same in full settlement of the obligation on Exhibit P-1. That the said Steckel then asked the said Swacker when the $750.00 would have to be paid, and the said Swacker said December 1, 1930. And the said Steckel then asked when possession to the real estate, the 480 acres, would have to be given, and the said Swacker said February 15, 1931. And that the said Steckel then said to the said Swacker that he would agree to that proposition and would pay the said $750.00 December 1, 1930, and give the deed, with possession February 15, 1931.

"Mr. McCash: I now ask counsel for the purpose of the record if he expects to show this by oral testimony of the witness on the stand?

"Mr. Taylor: Yes, sir. I expect to prove that by W. J. Steckel.

"Mr. McCash: By his oral testimony?

"Mr. Taylor: By his oral testimony.

"Mr. McCash: We now object to the offer for the reason that it is a manifest attempt to establish a contract which is within the statute of frauds by parol testimony, and that clearly such evidence is inadmissible; second, that there has been no proof of any authority on the part of A. W. Swacker to enter into any such alleged settlement or agreement in such a manner as would bind the plaintiff in this case.

"The Court: The objection to the offer as made will be sustained. (Which ruling was excepted to by the defendants.)

"Mr. Taylor: The defendants further offer to show by the witness, W. J. Steckel, that the proposition of giving a deed for said real estate and paying $750.00 was made by A. W. Swacker to W. J. Steckel, and not from W. J. Steckel to A. W. Swacker.

"Mr. McCash: The same objection as last urged to the offer No. 1, and for the further reason that it is immaterial.

"The Court: To the offer as made, the objection to the same is sustained. (Which ruling was excepted to by the defendants.)"

On December 15, 1930, Swacker wrote Willey J. Steckel and

Belle H. Steckel a letter, which appellants introduced in evidence, exhibit D-13, as follows:

"Loan Agency of the Northwestern Mutual Life Insurance Company of Milwaukee, Wis.

"A. W. Swacker, Loan Agent, 801 National Bank of Commerce Building, Telephone Main 2950, St. Louis, Mo.

"December 15, 1930.

"108241

"Mr. Willey J. Steckel, Mrs. Belle H. Steckel,

"Bloomfield, Iowa.

"Dear Sir and Madam:

"Mr. C. E. Hughes came to my office this morning and left a letter which you wrote me under date of December 11th, together with a bank draft for $751.75, payable to this Company's order, and a special warranty deed executed by you both in favor of this company.

"As I reported to you on November 20th, this matter was submitted to our Finance Committee and they declined to accept your proposition.

"I am, therefore, returning herewith the warranty deed executed by you to this company, and draft No. 8591 dated December 11th, 1930, of the Exchange Bank, Bloomfield, Iowa, to the Iowa National Bank, Ottumwa, Iowa, payable to this Company's order for $751.75.

"Yours very truly,

"[Signed]    A. W. Swacker, Loan Agent."

On December 20, 1931, A. W. Swacker, trustee named in the deed of trust, foreclosed the same, and the said real estate was sold at foreclosure sale for the sum of $14,000, leaving a deficiency of $1,998.56, for which amount the appellee commenced suit in the district court of Davis county, Iowa. The appellants admitted the execution of the note, and set up as their answer that they had made the agreement to deed back the land and pay the $750; they had tendered performance; and that they were at all times ready, willing, and able to carry out the agreement. The case proceeded to trial, and the appellants offered to prove their defense by the testimony of Mr. Steckel, which is set out in this opinion. The court refused to admit the evidence, and at the close of the appellants' evidence the appellee moved the court to direct a verdict for the

appellee upon the ground that there was not sufficient evidence to submit same to a jury. The lower court sustained the motion to direct, and thus this appeal.

The question in this case is not whether or not the court was right in the sustaining of the motion to direct the verdict, but the question is whether or not the court was right in excluding the testimony which the appellants offered to prove by the witness Steckel, for, without the testimony of the witness Steckel, even the appellant admits that there is not sufficient evidence in the record to carry the case to the jury. One of the grounds upon which the court refused to permit the evidence to be introduced was that the appellants had not sufficiently shown the agency and authority of Price and Swacker to act for the company. And so in this appeal we are confronted with the proposition of whether or not, under the facts as shown in this record and under the law as laid down by this court, the appellants have proved the authority of Price and Swacker.

There is a distinction pointed out and recognized by the authorities between "implied" and "apparent" authority. "Implied" authority is actual authority, circumstantially proved; while "apparent" authority is not actual authority, and may often be authority not actually possessed by the agent, but is such as the principal holds the agent out as possessing.

In the case of Nertney v. National Fire Ins. Co., 199 Iowa 1358, on page 1361, 203 N. W. 826, 827, this court said:

"Implied authority is said to be actual authority circumstantially proved—the authority which the principal intended the agent to possess. Apparent authority is not actual authority, but is such as the principal holds the agent out as possessing."

And in this same case our court quotes from the United States Supreme Court case of Union Mut. L. Insurance Co. v. Wilkinson, 13 Wall. (80 U. S.) 222, 20 L. Ed. 617, as follows:

"The powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the persons with whom he deals."

In 2 C. J., p. 564, section 206, the general rule is announced as follows:

"Where the third person has ascertained the general character or scope of the agency, he is authorized to rely upon the agent having such powers as naturally and properly belong to such character, and, in the absence of circumstances putting him upon inquiry, is not bound to inquire for secret qualifications or limitations to the apparent powers of the agent."

This quotation is cited with approval in Boylan v. Workman, 206 Iowa 469, 474, 220 N. W. 49, 51, and, in addition thereto, that case uses the following language:

"The inquiry of a stranger in dealing with an agent must be to ascertain whether or not such person is an agent, and in general, the character of that agency, but when that has been ascertained, not by what the alleged agent may say or do, but by what the principal has done, then the stranger has a right to rely thereon. And even though the agent, in such event, be a special one, yet the stranger has a right to rely upon that person's having such authority under the special agency as the principal has 'apparently' given him."

Thus applying the rule laid down by this court in the Boylan v. Workman case to the facts in this case, the appellee is a large insurance corporation and must conduct every transaction through an agent. Steckel knew nothing about the organization of the appellee company. He was told by Swacker, the company's agent in St. Louis, that the matter would have to be referred to the home office in Milwaukee, and so Steckel went to Milwaukee. He went to the building occupied by the appellee company. He went into that building and there he found the "information" desk. He went to the information desk and handed to the person in charge of the information desk the letter, exhibit D-3, which the appellee company had written to him, and the person in charge of the information desk directed Steckel to see Mr. Price as the person with whom Steckel should conduct his business transactions in the home office of the appellee company in Milwaukee. The appellee throughout its brief and argument continually refers to the person in charge of the information desk as "some unknown, unidentified clerk". It is true, the record does not show the name of the individual that was put there. But, whoever this "unnamed, unidentified person" was, that individual was placed there by the appellee company as the person to whom people coming into the appellee company's

home office should turn to ascertain with whom they should conduct their business. It was the Northwestern Mutual Life Insurance Company that had put this person at the information desk, and it was the Northwestern Mutual Life Insurance Company speaking to Steckel through the representative employed and kept there for that purpose. Where else could Steckel have gone to secure the information as to whom he should see? If the person that the company placed at the information desk could not give him the information which he desired, where could Steckel have secured it? He did not have access to other places in that building. He was a stranger, and no doubt, had he asked other employees, they would have referred him to the information desk. The party at the information desk told him, after reading the letter, exhibit D-3, which the appellee company had sent to Steckel, the person he wanted to see to conduct his business with in the home office in Milwaukee was Mr. Price, and that he was at a certain place in that building. The appellee company, speaking through the representative whom it holds out to the public as being the one qualified to give information to parties dealing with it, said:

"Mr. Price is the representative of the corporation with whom you should confer."

Steckel went to that person to whom he was directed to go by the appellee's employee at the information desk, Mr. Price, and there made a proposition of settlement to Mr. Price. Mr. Price had the files in his possession. Mr. Price then said to Mr. Steckel that Mr. Swacker, the representative of the company in St. Louis, who had seen the land and who was the company's trustee under this trust deed, was better qualified to settle the matter than the people in Milwaukee. And Mr. Price told Mr. Steckel to go to St. Louis, see Mr. Swacker, and make a deal with him. Mr. Steckel says that Mr. Price stated he would wire Mr. Swacker to hold up the proceedings until Mr. Steckel got there. The record shows that this was done, and the record also shows that the name of A. G. Miller was attached to the telegram which was sent to Mr. Swacker at St. Louis. The appellee company was holding out Mr. Price and Mr. Swacker as the men with whom Mr. Steckel should deal in this matter. The conduct of the company, acting through its representatives, the only way in which it could act, was such that any person

would be induced to believe that Mr. Swacker and Mr. Price were the agents authorized to handle this matter.

In the case of Wood v. Chicago, M. & St. P. Railroad Co., 68 Iowa 491, 27 N. W. 473, 56 Am. Rep. 861, this court said, speaking of the railroad agent:

"By placing him [agent] in charge of its business at that station, and empowering him to contract. for the shipment of such property, it [the company] held him out as possessing the authority to contract with reference to all the necessary and ordinary details of the business. Within the range of that business, he was a general agent. * * * [Page 497 of 68 Iowa, 27 N. W. 473, 476.]

"Shippers, as a rule, are required to deal with these agents in making contracts for the shipment of property. They are agents of the company's own selection, and are employed to represent and act for it; and to hold that contracts entered into by them, within the apparent scope of their authority, may be defeated by secret limitations upon their authority, would impose, in many cases, very grievous hardships upon those who are compelled to deal with them. The soundest considerations of public policy demand that the rule should be otherwise; and this view is well sustained by the authorities." (Page 498 of 68 Iowa, 27 N. W. 473, 476.)

In the case of Dickinson County v. Mississippi Valley Insurance Co., 41 Iowa 286, 290, this court said:

"The character of his agency is a question of fact for the jury to find upon the evidence submitted to them in the case."

Again, in the case of Whitlatch v. Bond & Mortgage Co., 199 Iowa 65, 72, 201 N. W. 108, 111, this court said as follows:

"The question of the authority of an agent to bind his principal is one of fact for the jury."

In 2 C. J., 962, section 733, the following rule is laid down:

"Where the nature and extent of an authority orally conferred upon an agent are to be determined upon conflicting evidence, or to be implied from the facts and circumstances, the question as to the nature and extent of the agent's authority and whether the particular act in controversy was within the scope of his authority are usually questions of fact for the jury, guided by proper instructions

from the Court, and in such cases it is error to take the question from them by nonsuit, instructions, or direction of verdict."

From a careful review of the record we are convinced that there was sufficient evidence of the agency of Swacker and Price to carry the case to the jury.

Steckel went to the home office of the insurance company. The "information" desk directed him to see Mr. Price. Mr. Price directed him to see Mr. Swacker. Mr. Swacker had the original papers in his hands. He was the trustee named in the deed. The record shows that Swacker received a telegram signed by A. G. Miller, who was the assistant counsel of the appellee company, to hold up proceedings until Steckel got to St. Louis. According to Steckel, this is just exactly what Price told Steckel he would do. Price and Swacker were the agents who were held out by the company as having charge of this matter, and, under the authority and rules laid down by this court, the lower court was in error in refusing to permit the testimony of Mr. Steckel on the question of settlement to be received in evidence.

The other ground urged by the appellee is that the agreement of settlement relied upon by appellants is within the statute of frauds (Code 1931, section 11285) and could not be established by parol evidence.

In the case of Hotchkiss v. Cox, reported in 47 Iowa 655, on page 657, this court said:

"It is insisted by plaintiff, however, that a parol agreement would not in any event be sufficient to divest their interest in the property. But if the plaintiff and her husband agreed to relinquish their interest in the property in consideration of the discharge of the plaintiff's husband's indebtedness to his father, and in consideration of his expense to his father in his last sickness (and the evidence shows that the father took his son in his last sickness into his house and kept him until he died), it appears to us that the agreement, although resting in parol, was valid."

Again we find the question before this court in the case of Kerr v. Yager, reported in 158 Iowa 69, 138 N. W. 905. On page 76 of 158 Iowa, 138 N. W. 905, 908, this court said:

"The satisfaction and release of a pre-existing debt is a sufficient consideration for a conveyance and amounts to such payment

as to take the case out of the statute of frauds. See the Hotchkiss case, supra. If Yager's case depended upon a parol gift, which must, to be sufficient, be followed by actual possession, if not by the making of improvements thereon, we should have more difficulty with it. But, as the conveyance was made in consideration of the son's past services, we think the agreement was something more than a gift. It was a transfer upon a consideration paid, and such acts of possession and ownership as followed are confirmation of the claims made by the Yagers. It would not be difficult to establish the claim of adverse possession against plaintiff John D. Kerr. But this would not dispose of the claim of Sadie Kerr, for as we think the statute did not run against James H. House during his lifetime."

In other words, the consideration had been paid by past service, for which the grantor-promisor was indebted to the grantee-promisee. Therefore, the promise to convey was merely a conveyance in return for a consideration which had already been paid, the existing debt. In the case at bar the agreement was to convey and pay a certain sum of money in consideration of the existing indebtedness by Steckel to the appellee company. Following the reasoning set out in the Kerr v. Yager case, the company had paid the consideration; therefore the contract is not within the statute of frauds. This court, speaking through Justice Evans, in the case of Richardson v. Estle, reported in 214 Iowa 1007, on page 1016, 243 N. W. 611, 615, said:

"The oral contract was valid and was therefore enforceable. It was not within the statute of frauds. * * * So we held in Kerr v. Yager, 158 Iowa 69, 138 N. W. 905. It was there held that a parol contract for the transfer of real estate in consideration of the extinguishment of existing indebtedness was an enforceable contract and was not within the statute of frauds. It had been so held in Hotchkiss v. Cox, 47 Iowa 655."

Thus, under the decisions of this court, an agreement to convey real estate in consideration of a pre-existing indebtedness is valid and not within the statute of frauds. This is because of the fact that the purchase price in such cases had, for all practical purposes, been paid by the grantee. There is nothing left to be done except to make the formal credits or releases. We therefore come to the conclusion that in the case at bar the statute of frauds

did not apply; that the lower court erred in not permitting the testimony which was offered; and that the judgment of the lower court must be, and it is hereby, reversed, and this cause remanded.

ALBERT, C. J., and STEVENS, ANDERSON, and KINTZINGER, JJ., concur.